703 F.2d 143
 TALBOT TRACTOR COMPANY, INC., Plaintiff,
v.
HINOMOTO TRACTOR SALES, USA and Southern Tractor
Corporation, Defendants-Third- Party-Plaintiffs-Appellants,
v.
KANEMATSU-GOSHO, (U.S.A.) Inc., Third-Party-Defendant-Appellee.
 No. 82-3389.
 United States Court of Appeals,
Fifth Circuit.
 April 18, 1983.
 
 Jerry Saporito, Albert C. Miranda, Metairie, La., for Hinomoto Tractor Sales USA.
 Hayes, Durio & Richard, Steven G. Durio, Lafayette, La., for Southern Tractor Corp.
 Franklin, Moore & Walsh, R. Michael Caldwell, Baton Rouge, La., Richard K. Jeydel, New York City, for Kanematsu-Gosho, Ltd.
 Appeals from the United States District Court for the Middle District of Louisiana.
 Before TUTTLE*, POLITZ and GARWOOD, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This is an appeal from the dismissal by the trial court of a third-party action against Kanematsu-Gosho, (U.S.A.) Inc., for want of personal jurisdiction in the State of Louisiana.
 
 I. STATEMENT OF FACTS AND PROCEEDINGS BELOW
 The parties in this action are as follows:
 
 2
 1. Toyosha Company of Japan--a tractor manufacturer;
 
 
 3
 2. Kanematsu-Gosho, (U.S.A.) Inc., ("K-G")--an importer of products that receives Toyosha tractors at West Coast ports and delivers them to Hinomoto in Houston for national distribution;
 
 
 4
 3. Hinomoto USA, Inc.--national distributor of Toyosha tractors;
 
 
 5
 4. Southern Tractor and Talbot Tractor--competing tractor distributors in Louisiana.
 
 
 6
 Talbot Tractor filed an action against Southern Tractor and Hinomoto alleging that Hinomoto had breached its non-exclusive Louisiana dealership contract with Talbot and that Southern had wrongfully induced the breach. Hinomoto and Southern then filed third-party demands against Toyosha and K-G alleging that if there was a failure to meet their contractual obligations, Toyosha and K-G had caused the damages alleged by Talbot. K-G moved to dismiss the third-party complaint for lack of personal jurisdiction.
 
 
 7
 The facts are largely undisputed. In 1978, Toyosha and Hinomoto entered into a contract granting Hinomoto the right to distribute Toyosha products in the United States and Canada. As a corollary to this agreement, Hinomoto and K-G agreed that K-G would serve as importer of Toyosha products for Hinomoto and would deliver them anywhere in the United States specified by Hinomoto. Hinomoto and K-G also agreed that K-G would aid in the processing of warranty claims by consumers of Toyosha products.
 
 
 8
 It is undisputed that K-G does not conduct or solicit any business activity in Louisiana. Its contract with Hinomoto was not executed in Louisiana and called for no performance by K-G in that state (though, presumably, if Hinomoto requested the goods to be delivered to Louisiana, K-G would have to comply). K-G takes title to the goods at the West Coast and its relationship with them ceases in Houston. The record is not clear as to whether K-G delivers Toyosha tractors to Hinomoto in any place other than Houston. K-G had no role to play in picking dealers.
 
 II. STATEMENT OF ISSUES
 
 9
 1. Does the district court have personal jurisdiction over K-G?
 
 
 10
 a) doing business?
 
 
 11
 b) minimum contracts?
 
 
 12
 c) fair and reasonable?
 
 
 13
 2. (Secondary Issue) If the Due Process Clause would not block the exercise of jurisdiction, does Sec. 3201(d) of the Louisiana Longarm Statute provide personal jurisdiction over an out-of-state contract breacher simply because a victim of the breach resides in-state?
 
 
 14
 Hinomoto's claim of personal jurisdiction is based on the Louisiana Longarm Statute, which provides:
 
 
 15
 A Court may exercise personal jurisdiction over a non-resident, who acts directly or by an agent, as to a cause of action arising from the non-resident's
 
 
 16
 (a) doing business in the state;
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 (d) causing injury or damage in this state by an offense or quasi-offense committed through an act or omission outside of the state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.
 
 
 20
 La.Rev.Stat.Ann. Sec. 13:3201(d).
 
 
 21
 This Court has held: "This statute was intended to permit the full exercise of in personam jurisdiction allowable under due process standards in cases when the suit 'arises from' the non-resident's contacts with the forum." Standard Fittings Co. v. Sapag S/A, 625 F.2d 630, 638-40 (5th Cir.1980), cert. denied, 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299, (1981). "Business activity which will satisfy the requirements of due process will thus necessarily satisfy the 'transacting business' requirement of the [Louisiana] Longarm Statute." Austin v. North American Forest, 656 F.2d 1076, 1089 (5th Cir.1981).
 
 III. THE DISTRICT COURT OPINION
 
 22
 The district court relied on Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and Product Promotions, Inc. v. Cousteau, 495 F.2d 483 (5th Cir.1974) to reject the notion that K-G had sufficient minimum contacts with the state to be haled into court. The court found that K-G had not purposefully availed itself of the benefits of conducting business in the state, and its contacts with Louisiana were not "reasonably foreseeable." The court held that the mere knowledge by K-G that Hinomoto had a national distributorship was insufficient since K-G never shipped any goods to Louisiana or performed any warranty work in the state.
 
 
 23
 Without citing any cases, the district court also stated that courts were less willing to assert jurisdiction over a party alleged to have breached a contractual duty than over a party "standing in the shoes of" the manufacturer of an injury-causing product.
 
 
 24
 Finally, the court (again without citing cases) asserted that even if K-G was subject to jurisdiction under the Due Process analysis, Sec. 3201(d) only addresses tortious misconduct and that no portion of the Statute provides for jurisdiction over a "breaching" party with only attenuated contacts in the state.
 
 IV. DISCUSSION OF ISSUES
 
 25
 The appellant bases its argument on the notion that K-G should reasonably have foreseen that some of the products handled by it would be sold or used in Louisiana. Appellant also urges that K-G "derives revenue" from the state since each tractor sold in Louisiana means an additional tractor shipped by K-G.
 
 
 26
 The appellant attempts to distinguish Volkswagen, the case relied on by the district court in which the Supreme Court refused to allow an Oklahoma state court to exercise jurisdiction over the sellers of an automobile in a products liability suit brought by persons who had purchased the automobile in New York as New York residents. The Court held that the mere fact that the accident occurred in Oklahoma was not enough and rejected the plaintiffs' contention that the "reasonably foreseeable" doctrine should subject the seller to suit in every state.
 
 
 27
 The appellant urges that the contacts in the present case were not "simply fortuitous" (as the Supreme Court labeled those in Volkswagen ) and cites Austin v. North America Forest Products, 656 F.2d 1076 (5th Cir.1981) where this Court stressed that jurisdiction may be exercised where contacts with the state are "purposeful and deliberate." The appellant urges that the present case bears no factual semblance to Volkswagen since K-G and Hinomoto were parties to an agreement specifying that Hinomoto was a distributor for an area including Louisiana.
 
 
 28
 Hinomoto also argues that notions of fairness and judicial economy compel the assertion of jurisdiction over K-G. Hinomoto notes that it was itself haled into court in Louisiana and urges that to require it to file a separate suit for indemnity in Texas would not create any inconvenience to K-G and would waste judicial resources.
 
 
 29
 The appellee K-G relies heavily on Volkswagen. As for the foreseeability of any product transported by K-G entering Louisiana, K-G quotes:
 
 
 30
 The foreseeability that is critical to due process analysis is not the mere likelihood that the product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.
 
 
 31
 Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567. K-G urges that the foreseeability doctrine is especially inapplicable to it given that it is not a manufacturer and that Hinomoto's claim rests on a breach of contract rather than a tort. K-G stresses that the manufacturer, Toyosha, had a direct distribution agreement with Hinomoto and that K-G acted for Hinomoto to transfer the goods to Houston.
 
 
 32
 The appellee stresses that its revenues and its activities with regard to Toyosha products were not directly connected in any way to the degree of Hinomoto's sales in Louisiana. K-G urges that it should not be subject to the jurisdiction of the Louisiana court simply because Hinomoto's national sales area happens to include Louisiana.
 
 
 33
 K-G attacks the appellant's "fairness" argument on two grounds. First, K-G urges that it deliberately structured its relationship with Hinomoto and Toyosha so as to be subject to suits only in a limited number of states; the legal system should have a "degree of predictability ... that allows potential defendants to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit." Volkswagen, supra, at 297, 100 S.Ct. at 567. As evidence of this intent, K-G points to its written arbitration agreements with Hinomoto and Toyosha and urges that Hinomoto can hardly claim that the present suit represents the most efficient resolution of this dispute.
 
 
 34
 Both parties recognize that the Supreme Court's pronouncements in Volkswagen, supra, must be carefully analyzed for our determination whether personal jurisdiction exists in this case. Appellee contends that Volkswagen controls because the facts here neatly meet those in Volkswagen. Appellant, to the contrary, points to the fact that there is an important distinction in the facts, to wit: that the only basis for jurisdiction in Volkswagen was the fact that an automobile manufactured or sold by the out-of-state defendant ended up in the State of Oklahoma where it figured in a tortious incident whereas here, the out-of-state defendant is in the chain of national distribution of equipment that ultimately found its way to the State of Louisiana.
 
 
 35
 Appellant cites only one Fifth Circuit case, Austin v. North American Forest, supra, in its effort to find a matching state of facts based on a breach of contract. In Austin, this Court found in favor of longarm jurisdiction under the Louisiana statute because of the very significant fact present in that case, that the out-of-state defendant was actually required to, and did, submit to the Louisiana plaintiff a certificate of compliance with federal standards, which was required under federal regulations before the contract for the purchased materials could be approved. 656 F.2d at 1090. This, undoubtedly, furnished sufficient contact, not only with the State of Louisiana, but with the particular plaintiff, to warrant, as found by this Court, a determination that the Louisiana statute conferred jurisdiction.
 
 
 36
 Another Fifth Circuit case, Product Promotions, Inc. v. Cousteau, 495 F.2d 483 (5th Cir.1974), was cited by the trial court. In that case the Court held that the plaintiff failed to connect Jacques Cousteau and his French company to the contract entered into between Product Promotions, Inc., and CEMA on the basis of agency. It then discussed the nature of proof required to support personal jurisdiction over CEMA, the other party to the contract. It first held that the contract was actually made in Texas. The court then said:
 
 
 37
 ... since the contract was made in Texas, CEMA had reason to foresee that enforcement and protection of its own rights under the contract might depend on the laws of Texas. In short, CEMA voluntarily entered a transaction with one it knew to be a Texas resident, a transaction which had a substantial connection with Texas and which CEMA had reason to know would have consequences in Texas. (Footnotes omitted).
 
 
 38
 495 F.2d at 497. See also, Benjamin v. Western Boat Building Corp., 472 F.2d 723 (5th Cir.1973), a breach of contract case, which we feel fully supports the trial court's decision here.
 
 
 39
 In Volkswagen, the court cited six factors which it considered in determining that longarm jurisdiction over the defendant did not reside in the Oklahoma courts: (1) defendant conducts no activity in the state; (2) it closes no sales and performs no services in the state; (3) it avails itself of none of the privileges and benefits of state law; (4) it solicits no business either through sales persons in the state or ads reasonably calculated to reach the state; (5) it makes no regular sales to state residents; and (6) it does not "indirectly, or through others, serve or seek to serve the [state] market." 444 U.S. at 295, 100 S.Ct. at 566.
 
 
 40
 All of these factors apply to K-G in the present case except possibly the final one, for it is not entirely clear that K-G does not "indirectly, or through others, ... seek to serve the [state] market." However, with respect to this factor the Court said: "[F]inancial benefits accruing to the defendant from a collateral relationship to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State." 444 U.S. at 299, 100 S.Ct. at 568. Here, there was no effort made by the appellants to show that the sale of a tractor in Louisiana even added substantially to profits of K-G.
 
 
 41
 Since we conclude that the trial court was correct in finding against personal jurisdiction on due process grounds, we do not reach the question whether subsection (d) would otherwise provide a basis for jurisdiction.
 
 
 42
 As to appellant's argument that jurisdiction should be found because of "fairness" in permitting it to litigate against all parties where it was forced into court by the plaintiff, it is clear that fairness itself cannot overcome the requirement of some necessary minimum contacts. In Volkswagen, the Court said:
 
 
 43
 Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.
 
 
 44
 444 U.S. at 294, 100 S.Ct. at 565.
 
 
 45
 The judgment is AFFIRMED.
 
 
 
 *
 Circuit Judge of the Eleventh Circuit, sitting by designation