**AMUSEMENT EQUIPMENT, INC.**

v.

**Carl Heinz MORDELT and Heinz Mordelt GMbH and Co. K.G. "Heimo".**

**Civ. A. No. 83–5660.**

United States District Court, E.D. Louisiana.

July 25, 1984.

---

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Herschel L. Abbott, Jr., Elizabeth J. Futrell, Carl D. Rosenblum, Trial Atty., New Orleans, La., for plaintiffs.

Arthur L. Ballin and Frank C. Dudenhefer, Jr., New Orleans, La., for defendants.

## MEMORANDUM OPINION

ARCENEAUX, District Judge.

This matter arises out of an action for breach of contract brought by Amusement Equipment, Inc., a Florida corporation, against Heinz Mordelt GMbH and Co. K.G. ("Heimo"), a West German corporation, and Carl Mordelt, the corporation's general manager and a resident of West Germany. During September of 1983, the owner of Amusement Equipment, John Bond, visited Heimo's factory in West Germany and purchased certain remote controlled boats for exhibition at an amusement industry trade show to be held in Jacksonville, Florida. Bond also discussed with representatives of Heimo the possibility of acquiring certain of Heimo's products for exhibition at the Sixty-Fifth Annual Convention and Trade Show of the International Association of Amusement Parks and Attractions, to be held in New Orleans from November 17 through 20, 1983.

Bond was satisfied with the Heimo equipment exhibited at the Florida trade show. Consequently, on October 25, 1983, Bond contacted Mr. Mordelt by telephone to procure additional products for exhibition at the New Orleans trade show. Amusement Equipment agreed to purchase one animat-

ed display elephant, four remote controlled automobiles and certain accessory equipment from Heimo for a price of DM 37,130 which, at the time, equalled U.S. $14,295.00. Heimo understood that Amusement Equipment intended to display the products at the New Orleans trade show scheduled to begin on November 17, 1983. Amusement Equipment needed the products delivered to Miami in sufficient time before the trade show so that they could be transported by its truck to New Orleans. Accordingly, Bond demanded that the products be delivered to Miami by November 12, 1983. Heimo required prepayment before it would ship the merchandise overseas.

On November 3, 1983, Amusement Equipment sent Heimo a telex stating that payment had been made by wire transfer on November 2, 1983, but that such payment was conditioned upon delivery of the products in Miami by November 12, 1983. If delivery of the goods could not be accomplished by that time, Amusement Equipment directed that its order be cancelled and that the funds be returned. On November 4, 1983, Heimo telexed Amusement Equipment that if the funds were received by its bank by November 7, 1983, Heimo could "guarantee [compliance with Amusement Equipment's] delivery requirements." On November 7, 1983, Heimo learned from its bank that the payment of Amusement Equipment had been received. Heimo then arranged for the shipment of the merchandise through a German freight forwarder, Max Grunht, an independent contractor. Grunht received the merchandise at the Stuttgart Airport on November 9, 1983. Heimo directed that the goods be shipped to London on November 10, 1983 for immediate transfer to a Miami bound flight departing later the same day. Heimo telexed the shipping information to Amusement Equipment the same day. Also on November 9, 1983, Heimo sent Amusement Equipment an order confirmation, which provided that the merchandise was shipped C.I.F. "C.I.F." is the same as "F.O.B.," which means that title and the risk of loss passed to the purchaser upon delivery of the merchandise to the freight forwarder.

On November 12, 1983, Amusement Equipment telephoned Heimo that the merchandise had not yet arrived in Miami. Upon investigating the matter, Heimo learned that the airline departing London had refused to accept the shipment, since an earlier flight had been cancelled and freight from that flight had been given priority. The airline allowed the merchandise to remain in London without informing the freight forwarders, Heimo or Amusement Equipment. Later on the 12th of November, Amusement Equipment telexed Heimo that the contract was cancelled and requested return of the funds. Heimo refused to return the funds.

Heimo is a member of the International Association of Amusement Parks and Attractions, the sponsor of the New Orleans show. Consequently, on November 20, 1983, Mordelt arrived in New Orleans to attend the trade show. Amusement Equipment alleges that Mordelt attended the show as representative of Heimo. Thus, on November 11, 1983, Mordelt was personally served in New Orleans for himself and for his employer, Heimo.

Mordelt and Heimo now move to dismiss for lack of personal jurisdiction. This motion raises the issue of whether this Court may, consistent with the due process clause, exercise personal jurisdiction over the defendants. Amusement Equipment alleges that the Court may exercise personal jurisdiction over defendants for the following reasons: (1) process was served on Mordelt, an agent of Heimo, while he was in Louisiana; (2) defendants transacted business in Louisiana, since they sold their merchandise to Amusement Equipment knowing that the products would be exhibited and possibly sold in Louisiana, and because Mordelt attended the New Orleans trade show; (3) defendants anticipated being haled into court in Louisiana, because they knew that the merchandise was to be exhibited in Louisiana.

## LAW

"[T]he power of a federal court entertaining a suit based on diversity of citizenship to exercise jurisdiction over the persons of non-resident defendants turns on two independent considerations. The law of the state in which the court sits must confer jurisdiction over the persons of the defendant, and if it does, the exercise of jurisdiction under state law must comport with basic due process requirements of the United States Constitution." *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.,* 700 F.2d 1026, 1028 (5th Cir.1983) (quoting *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 489 (5th Cir.1974).

▆▆▆ Amusement Equipment argues that Louisiana law confers personal juris-

**1.** Article 6 provides, in pertinent part:

Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. This jurisdiction must be based upon:

(1) The service of process on the defendant, or on his agent for the service of process.

**2.** Section 3201 provides:

A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's

(a) *transacting any business in this state;*

(b) contracting to supply services or things in this state;

(c) causing injury or damage by an offense or quasi offense committed through an act or omission in this state;

(d) causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; or

(e) having an interest in, using, or possessing a real right or immovable property in this state.

**3.** The due process clause limits the state's jurisdictional reach with respect to both means of obtaining in personam jurisdiction over nonresident defendants—under Codal article 6 and under Revised Statute section 3201.

a. *Article 6 and the doctrine of transient jurisdiction*

Article 6 provides that personal jurisdiction may be based upon "the service of process on the defendant, or on his agent for service of process." Here, there is no dispute that Mordelt, agent of Heimo, was personally served while in New Orleans. However, Mordelt was

diction over Heimo because Mordelt, its agent, was personally served while present in Louisiana, see La.Code Civ.Proc. art. 6(1) (West 1960 and 1984 suppl.)[1], and because, though it is a nonresident, Heimo may be forced to appear under the Louisiana Long-Arm Statute, La.Rev.Stat.Ann. § 13:3201 (West 1968 and 1984 suppl.).[2] Let us assume, for the sake of argument, that Heimo was properly served *both* under Codal article 6 and under section 3201 of the Revised Statutes. The due process clause limits the state's jurisdictional reach with respect to both. Thus, it is unnecessary to analyze the propriety of the assertion of personal jurisdiction under Codal article 6 separately from the assertion of personal jurisdiction under section 3201. The analysis is the same under both.[3]

in New Orleans simply to attend the trade show, which lasted only a few days. Therefore, his presence in Louisiana was only transitory.

At one time, when the foundation of personal jurisdiction was "physical power", a court gained personal jurisdiction over any defendant who had been served with process within its territorial bounds at the beginning of the suit. See *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877); *McDonald v. Mabee,* 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1917). As a result of the *Pennoyer* decision, it became clear that even if the defendant's presence within the state was transitory, perhaps only long enough to allow him to be served with process, the court could properly assert in personam jurisdiction over him. 4 Wright and Miller, Federal Practice and Procedure § 1064 at 209 (West 1969 and 1984 suppl.).

However, the Supreme Court's decision in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), adopting the minimum contacts test for in rem and quasi in rem jurisdiction, casts considerable doubt on the continued vitality of the transient jurisdiction doctrine. 4 Wright and Miller § 1064, suppl. at 37; Bernstine, *Shaffer v. Heitner: A Death Warrant for the Transient Rule of In Personam Jurisdiction,* 25 Vill.L.Rev. 38 (1979). In *Shaffer,* the Court examined the evolution of the doctrinal foundations of personal jurisdiction from *Pennoyer* to *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and observed that "the theory that territorial power is both essential to and sufficient for [personal] jurisdiction has been undermined ..." 97 S.Ct. at 2583. The Court further observed that after *International Shoe,* "the relationship among the defendants, the forum and the litigation rather than the mutually exclusive

■ The exercise of personal jurisdiction over a nonresident defendant comports with constitutional due process requirements if (1) the nonresident defendant has some minimum contacts with the state resulting from an affirmative act or acts on its part, and (2) it is not unfair or unreasonable to require the defendant to defend the suit in the forum. *Hydrokinetics, supra* at 1028 (quoting *Southwest Offset, Inc. v. Hudco Publishing Co., Inc.*, 622 F.2d 149, 152 (5th Cir.1980)). The constitutional test has two prongs: an "affirmative act" prong and a "fairness" prong. One prong cannot compensate for or overcome the other. *Talbot Tractor Co. v. Hinomoto Tractor Sales, USA*, 703 F.2d 143, 147 (5th Cir.1983).

The affirmative act prong requires that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). "Considerations such as the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it, and the relationship between the cause of action and the contacts, relate to ,whether it can be said that the defendant's actions constitute 'purposeful availment.'" *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir.1981). The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court in the forum state. *World-Wide Volkswagen Corp., v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

The fairness prong requires the Court to consider, among other things, "the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, whether the state has any special interest in providing a forum for the suit, and the basic equities of the situation." *Growden v. Ed Bowlin and Associates, Inc.*, 733 F.2d 1149, 1150–51 (5th Cir.1984).

sovereignty of the States on which the rules of *Pennoyer* rest, became the central concern of the inquiry into personal jurisdiction." 97 S.Ct. at 2580. The *Shaffer* Court concluded that *"all* assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." 97 S.Ct. at 2784 (emphasis added). To the extent that prior decisions such as *Pennoyer* were inconsistent with the *International Shoe* standards, they were overruled. 97 S.Ct. at 2784 n. 39.

Consequently, whenever a state seeks to exercise personal jurisdiction over a nonresident defendant, the critical question is whether the defendant has "certain minimum contacts with [the state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe, supra*, 326 U.S. at 317, 66 S.Ct. at 158. Mere service of process on a nonresident defendant only transiently within the state no longer vests the state with personal jurisdiction over the defendant. 4 Wright and Miller, *supra*, § 1102 at 388–89; Reese and Rosenberg, *Cases and Materials on Conflict of Laws* 49 (7th ed. 1978); Cranton, Currie and Kay, *Conflict of Laws* 575 (2d ed. 1975); *contra Donald Manter Co., Inc. v. Davis*, 543 F.2d 419 (1st Cir.1976); *Opert v. Schmid*, 535 F.Supp. 591, 593 (S.D.N.Y.1982).

Insofar as the transient jurisdiction doctrine runs afoul of the minimum contacts test for personal jurisdiction framed by *International Shoe*, the doctrine, and its obsolete theoretical underpinnings, must give way. Therefore, whether this Court may assert personal jurisdiction over Heimo on the basis of Codal article 6(1) must be judged by the standards of *International Shoe* and its progeny. Mere personal service upon Carl Mordelt is not, as Amusement Equipment argues, sufficient to justify the assertion of personal jurisdiction over defendants.

b. *Section 3201—the Long Arm Statute*

Section 3201 of the Revised Statutes allows a Louisiana court to exercise personal jurisdiction over a nonresident defendant "who acts directly or by an agent, as to cause a cause of action arising from the nonresident's ... transacting any business in this state, [or by] contracting to supply ... things in this state ..." The Louisiana Long-Arm Statute permits exercise of in personam jurisdiction to the full limits of due process under the fourteenth amendment in cases where the suit arises from the nonresident's contact with the forum. *Quasha v. Shale Development Corp.*, 667 F.2d 483, 486 (5th Cir. 1982). As mentioned above, the minimum contacts test of *International Shoe* governs the propriety of a state's assertion of personal jurisdiction over a nonresident defendant under a long-arm statute. Thus, whether this Court may assert personal jurisdiction over Heimo on the basis of Revised Statutes section 3201 must also be judged by the standards of *International Shoe* and its progeny.

## ANALYSIS

### 1. *Affirmative Act Prong*

■ Here Heimo engaged in the following affirmative acts which arguably connect it to Louisiana: it entered into a contract for the sale of amusement merchandise which it knew was to be exhibited in New Orleans; it maintained a membership in the association which sponsored the New Orleans Trade Show; and its general manager, Carl Mordelt, attended the New Orleans trade show.

The contract of sale, the transaction out of which this cause of action arose, had remarkably little connection with Louisiana. The parties initiated discussion of the deal in a face-to-face meeting at Heimo's factory in West Germany. The terms of the contract were negotiated by telephone and telex between Florida and West Germany. Payment was made through a Florida bank and directed to a West German bank. The merchandise was to be delivered in Florida. True, Amusement Equipment intended immediately to transport the merchandise to New Orleans. However, this is a contact of Amusement Equipment, and not of Heimo, with Louisiana.

On the other hand, Heimo realized that Amusement Equipment intended to exhibit the merchandise at the New Orleans trade show. Thus, Heimo could have foreseen that failure to timely deliver the merchandise could have tangible consequences in Louisiana. However, it is not clear that this fact would have led Heimo to reasonably anticipate being haled into court in Louisiana. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into Court there." *World Wide Volkswagen Corp., supra,* 444 U.S. at 298, 100 S.Ct. at 567 (citations omitted). Heimo did not deliver a defective product which caused injury in Louisiana. This is not a tort action, but one for breach of contract. Presumably, the aggrieved party to a breach of contract action would bring suit in its home state which is, in this case, Florida and not Louisiana. Thus the foreseeable consequences stemming from the breach of the contract of sale tended to gravitate toward Florida, and not Louisiana.

■ The other alleged contacts of Heimo with Louisiana seem to be unrelated to the cause of action. There is no evidence that Heimo's membership in the International Association of Amusement Parks and Attractions, a sponsor of the New Orleans trade show, at all pertained to the contract of sale. Nor is there any evidence that the presence of Mr. Mordelt at the trade show was related to the contract of sale. Indeed, by the date of the trade show, November 17, 1983, the contract had already been negotiated, executed, and (allegedly) breached. Certainly, the contract of sale pertained to the New Orleans trade show, in that Amusement Equipment intended to display there the merchandise purchased from Heimo. Also, Mr. Mordelt's presence in New Orleans was related to the trade show—he came to New Orleans in order to attend the show. However, there is nothing linking Mr. Mordelt's presence in New Orleans to the contract of sale.[4] Thus, this

---

**4.** By attempting to link these two occurrences simply because of their connection to the New Orleans convention, Amusement Equipment commits the logical fallacy of the "undistributed middle." See I. Copi, *Introduction to Logic* 200 (4th ed. 1972). Consider the following syllogism which, like the argument of Amusement Equipment, contains the fallacy of the undistributed middle:

> All dogs are mammals.
> *All cats are mammals.*
> Therefore, all cats are dogs.

It is easy to see why this syllogism is invalid. Both dogs and cats are members of the larger class of mammals. This does not mean, however, that the class of dogs is identical to, or even overlaps with, the class of cats.

Yet the argument of Amusement Equipment takes precisely the same form. Amusement Equipment argues that:

> The contract related to the trade show.
> *Mordelt's visit related to the trade show.*
> Therefore, the contract related to Mordelt's visit.

case does not satisfy the affirmative act prong of the minimum contacts test.

### 2. *Fairness prong*

 The fairness prong requires the Court to consider the unfairness or unreasonableness of requiring the defendant to defend suit in the forum. The relative convenience of the parties hardly favors Louisiana. Heimo is not a Louisiana corporation, maintains no place of business and conducts no business here. Amusement Equipment is a Florida corporation, and while it is licensed to do business in Louisiana, it appears to have brought suit here simply because it was able to personally serve Mordelt in New Orleans.

Moreover, Louisiana afforded the parties neither the benefits nor the protections of its laws, and has no special interest in providing a forum for this suit. Amusement Equipment is a Florida corporation; consequently, Florida, and not Louisiana, has an interest in seeing that its aggrieved resident obtains redress.

Finally, the basic equities of the situation do not favor a Louisiana forum. Amusement Equipment saw fit to travel to West Germany to inspect Heimo's merchandise. The contract of sale was negotiated and executed by telephone and telex between Florida and West Germany. Heimo did not reach out to Amusement Equipment in Louisiana. Thus, it would be unfair to require Heimo to answer for the alleged breach of contract in Louisiana. This case does not satisfy the fairness prong.

Carl Mordelt is a defendant to this suit because he allegedly acted outside the scope of his official capacity in negotiating the contract of sale. Mordelt had the same, and certainly no closer contacts with Louisiana than did Heimo. Thus, what has been said about Heimo applies equally to Mordelt. Mordelt also lacks contacts with Louisiana sufficient to justify the assertion of personal jurisdiction over him.

---

The syllogism is invalid. That both the contract and Mordelt's visit pertained to the trade show does not mean that the two were connected to each other. The contract related to the trade

Accordingly, the motion of defendants Heimo and Carl Mordelt to dismiss the complaint for lack of personal jurisdiction is hereby GRANTED. Judgment will be entered accordingly.

---

show in respects that Mordelt's visit did not. This is apparent from the fact that Mordelt visited New Orleans after the contract had been negotiated, executed, and allegedly breached.