490 So.2d 667 (1986)
Flora Linda Vasquez DUEHRING, Plaintiff-Appellee,
v.
Joe Raymond VASQUEZ, Sr., Defendant-Appellant.
No. 17889-CA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
*668 Graves, Daye, Bowie & Beresko by Alfred R. Beresko, Shreveport, for defendant-appellant.
Love, Rigby, Dehan, Love & McDaniel by Samuel P. Love, Jr., Shreveport, for plaintiff-appellee.
Before HALL, JASPER E. JONES and LINDSAY, JJ.
HALL, Chief Judge.
The issue before us in this action for an increase in child support is whether, consistent with the Due Process Clause of the Fourteenth Amendment of the United States Constitution, a district court in Louisiana may exercise in personam jurisdiction over a nonresident parent of a minor child domiciled in this state when the nonresident parent was personally served with process within this state while visiting with the child, as he had done on three previous occasions.
Plaintiff, Flora Linda Vasquez Duehring, instituted the action in Caddo Parish against the defendant, Joe Raymond Vasquez, Sr., seeking an increase in child support. Personal service of process was accomplished when the defendant, a resident of California, entered this state to visit his child. Defendant filed exceptions of improper venue and lack of in personam jurisdiction. The trial court granted defendant's exception of improper venue and transferred the case to Bossier Parish; however, the court overruled defendant's jurisdictional exception. Alleging that irreparable injury will occur by requiring the defendant to litigate the merits of the case at great expense of time and money, the defendant filed an appeal from the judgment overruling the exception of lack of in personam jurisdiction.
The ruling of the district court overruling defendant's declinatory exception is not an appealable judgment. It is well settled that the inconvenience and expense incurred in the defense of a lawsuit does not constitute irreparable injury within the meaning of LSA-C.C.P. Art. 2083, Kyle v. Kyle, 358 So.2d 708 (La.App. 3d Cir.1978); Mauterer v. Tillery, 328 So.2d 755 (La. App. 1st Cir.1976). However, this court will treat the appeal as an application for supervisory writs. Finding that the Louisiana court has in personam jurisdiction over the defendant under the circumstances of this case, we deny the writ.
FACTS
The facts of this case were stipulated by the parties. Plaintiff and defendant were married in Texas in 1976 and their child, Joe Raymond Vasquez, Jr., was born on October 25, 1977. The parties were divorced in 1981 in Texas at which the time the Texas court ordered the defendant to pay the sum of $75.00 per month child support. After their Texas divorce, the defendant moved to Vista, California while the plaintiff moved to Shreveport, Louisiana. After filing the present action, the plaintiff moved to Bossier City.
During the past two years, the defendant has entered Louisiana four times for the sole purpose of exercising his visitation rights with his son. On August 8, 1984, plaintiff filed her petition for an increase in child support from $75.00 per month to $350 per month. When the father last appeared in this state for visitation, the father was served with process in this action.
PERSONAL SERVICE OF PROCESS
The first issue for determination is whether service of process on a nonresident defendant while he is physically present in the state of itself provides a sufficient basis for the exercise of in personam jurisdiction under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.
In the present case, the defendant does not dispute the adequacy of the notice he received, but contends that his connection with the State of Louisiana is too attenuated under the standards implicit in the Due Process Clause to justify imposing upon *669 him the burden and inconvenience of defense in Louisiana.
Plaintiff contends that Louisiana law confers personal jurisdiction over the defendant because the defendant was personally served while present in Louisiana pursuant to LSA-C.C.P. Art. 6. Plaintiff contends that the service of process within the state is alone sufficient to satisfy due process standards.
It has long been well established law in the State of Louisiana that a resident of this state has the right to sue a nonresident on any cause of action, and, if personal service of citation can be obtained on the nonresident anywhere in the state, the resident can secure a personal judgment against him. Roper v. Brooks, 201 La. 135, 9 So.2d 485 (1942); Gamburg v. Ray, 167 La. 863, 120 So. 480 (1929). This principle of law was addressed in the classic case of Pennoyer v. Neff, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1878), which set out two jurisdictional principles. First, every state possesses exclusive jurisdiction and sovereignty over persons and property within its territory; and second, no state can exercise direct jurisdiction over persons or property outside its boundaries. The force of the latter principle was drastically diminished by the minimum contacts standard established by International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and in other "Long-Arm Statute" cases which have subsequently followed. The question left specifically unanswered by the Supreme Court is the extent to which the court's interpretation of the Due Process Clause has altered the first principle of Pennoyer that a state possesses exclusive jurisdiction and sovereignty over those persons found within its borders.
The Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). A valid judgment imposing a personal obligation or duty in favor of the plaintiff in a child support action may be entered only by a court having jurisdiction over the person of the defendant. Pennoyer v. Neff, supra; Imperial v. Hardy, 302 So.2d 5 (La.1974).
The United States Supreme Court has set forth two requirements of the due process clause for the existence of in personam jurisdiction. First, the existence of personal jurisdiction depends upon the presence of reasonable notice to the defendant that an action has been brought. Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). And secondly, there must exist a sufficient connection between the defendant and the forum state such that traditional notions of substantial justice and fair play are not offended by requiring defense of the action in the forum. Kulko v. Superior Court of California, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). The Due Process Clause has also been described as protecting an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. Burger King Corp. v. Rudzewicz, ___ U.S. ___, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
In International Shoe Company v. Washington, supra, the Supreme Court held that a court can exercise in personam jurisdiction over a nonresident defendant who was not served with process within the state whenever the defendant has sufficient minimum contacts with the forum state for that state to exercise jurisdiction consistent with traditional notions of fair play and substantial justice. The focus of the inquiry in International Shoe was not on whether the corporation was "present" but on whether there had been such contacts of the corporation with the forum state as to make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which was brought there. 326 U.S. at 317, 66 S.Ct. at 158.
The court in International Shoe, further stated:

*670 ... Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. [citations omitted] [Id., at 319, 66 S.Ct. at 160.]
In Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the court limited the expanding reach of the minimum contacts analysis of International Shoe by holding that minimum contacts cannot be found to exist unless "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws."
Shaffer v. Heitner, supra, involved quasi in rem jurisdiction based on the presence of the defendant's property in the forum state. In holding that presence of property in the state without minimum contacts of the defendant with the state was not sufficient to support personal jurisdiction, the court employed the due process clause to restrict the long-standing rules of quasi in rem jurisdiction based on the presence of property within the territorial limits of the forum state.
In Shaffer v. Heitner, the court recognized that:
... the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the states on which the rules of Pennoyer rest, became the central concern of the inquiry into personal jurisdiction. The immediate effect of this departure from Pennoyer's conceptual apparatus was to increase the ability of state courts to obtain personal jurisdiction over nonresidents. See, e.g., Green Jurisdictional Reform in California, 21 Hastings L.J. 1219, 1231-1233 (1970); Currie, The Growth of the Long Arm: Eight Years of Jurisdiction in Illinois, 1963 U.Ill.L.F. 533; Developments 1000-1008. [433 U.S. at 204, 97 S.Ct. at 2580.]
The court in Shaffer further stated that:
It is clear, therefore, that the law of state court jurisdiction no longer stands securely on the foundation established in Pennoyer. We think that the time is ripe to consider whether the standard of fairness and substantial justice set forth in International Shoe should be held to govern actions in rem as well as in personam. [433 U.S. at 206, 97 S.Ct. at 2581.]
After examining the doctrinal foundations of in rem, quasi in rem, and in personam jurisdiction from Pennoyer to International Shoe, the court concluded that "All assertions of state court jurisdiction must be evaluated according to the standards set forth in International Shoe and its progeny." 433 U.S. at 212, 97 S.Ct. at 2584. The court further held that to the extent that Pennoyer was inconsistent with this new standard, it was overruled. 433 U.S. at 212, 97 S.Ct. at 2584, n. 39.
In Ins. Corp. of Ireland v. Compagnie Des Bauxites, 456 U.S. 694 at 702, 102 S.Ct. 2099 at 2104, 72 L.Ed.2d 492 (1982) the court held:
... The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that `the maintenance of the suit ... not offend traditional notions of fair play and substantial justice.' [Citations omitted.]
In Burger King Corp. v. Rudzewicz, supra, the court again recognized that the Due Process Clause operates as a protection to the individual, restricting state power, and must be seen as ultimately a function of individual liberty interest rather than as a function of sovereign power. 105 S.Ct. at 2182. In Amusement Equip., Inc. v. Mordelt, 595 F.Supp. 125 (E.D.La.1984) a federal district court in Louisiana found that the territorial power theory both essential *671 to and sufficient for personal jurisdiction found in Pennoyer v. Neff has been undermined by the Supreme Court's decision in Shaffer v. Heitner, supra. The court recognized that after International Shoe, the relationship among the defendants, the forum, and the litigation rather than the mutually exclusive sovereignty of the states on which the rules of Pennoyer rests became the central concern of the inquiry into in personam jurisdiction. Consequently, the court in Amusement Equip., Inc. held that whenever a state seeks to exercise personal jurisdiction over a nonresident defendant, the critical question is whether the defendant has certain minimum contacts with the state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. The court found that mere service of process on a nonresident defendant only transiently within the state no longer vests the state with personal jurisdiction over the defendant.
We likewise conclude that that the jurisdictional principals of in personam established in Pennoyer v. Neff have been effectively overruled by the Supreme Court's decision in Shaffer v. Heitner, supra, and the other cases cited above. Mere service of process upon a nonresident defendant transiently within the state is no longer sufficient to satisfy due process standards which focus upon the individual's liberty interest and upon the restriction of judicial power in the interest of fair play and substantial justice. As the Supreme Court held in Shaffer, all assertions of state court jurisdiction must be evaluated according to the standards set forth in International Shoe.
MINIMUM CONTACTS TEST
Having found that all assertions of state court jurisdiction over nonresidents must be evaluated according to the standards of International Shoe, we must determine whether there exists sufficient minimum contacts between this defendant and the forum state to make it fair to require defense of this action in this state.
The applicable jurisprudence was recently discussed by the Louisiana Supreme Court in Fryar v. Westside Habilitation Center, 479 So.2d 883 (La.1985), as follows:
The basic due process requirement for jurisdiction over a person is minimum contacts with the forum state. International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). An individual is not subject to the jurisdiction of a forum with which he has established no `contacts, ties or relations' International Shoe Company v. Washington, 326 U.S. at 319, 66 S.Ct. at 160, 90 L.Ed. at 104. The contacts with the forum state cannot be `isolated,' `fortuitous,' or `attenuated.' There must be a substantial connection between the defendant's activities and the forum state, but physical entry into the forum state is not essential. Burger King Corp. v. Rudzewicz, 471 U.S. ___, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Plaintiff's residence is not irrelevant to the inquiry, because defendant's relationship with plaintiff may enhance defendant's contacts with the forum. Ketton v. Hussler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).
A person must have fair warning that an activity may subject him to foreign jurisdiction. Burger King, supra. This allows a potential defendant some assurance as to where he will be liable to suit. World-wide Volkswagon Corporation v. Woodson, supra; Burger King, supra. The requirement of fair warning is satisfied when a defendant has purposefully directed his activities at a resident of the forum, and the litigation results from foreseeable injuries arising out of or related to those activities. International Shoe, supra; Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); Burger King, supra.
* * * * * *
When minimum contacts are present, they must be balanced with other factors to determine whether personal jurisdiction affords substantial justice, is reasonable *672 and compatible with fair play. International Shoe Company v. Washington, supra; Schaffer v. Heitner, [sic] 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); World-wide Volkswagon Corporation v. Woodson, supra; Burger King, supra; Restatement (2d) of Conflict of Laws, §§ 36, 37 (1971). Factors to be evaluated include the burden on the defendant, the forum state's interest, the plaintiff's interest, the system's interest in obtaining the most efficient resolution of controversies, and the furtherance of fundamental substantive social policies. World-wide Volkswagon Corp. v. Woodson, supra; Burger King, supra.
In a child support action similar to the instant case the United States Supreme Court held that the state court lacked in personam jurisdiction. In Kulko v. Superior Court of California, supra, the parties, both New York domiciliaries, were married in 1959 in the state of California. They resided in the state of New York during their marriage and had two children. The parties separated in 1972 at which time the mother moved to California. The parties executed a separation agreement whereby the children were to remain with their father during the school year but during specified vacations, the children would reside with their mother in California or wherever she chose to live. The father also agreed to pay $3,000 per year in child support for the periods when the children were in the custody of their mother. Their daughter soon thereafter decided that she wanted to live with her mother during the school year and spend her vacations with her father so her father bought his daughter a one-way plane ticket and sent her to her mother in California. In 1976, the parties' son flew to California to live with his mother when the mother sent her son a plane ticket. Shortly after the son's arrival in California, the mother commenced a custody and child support action in the state of California. We discern from the facts as stated in the opinion that the father had not appeared in California for many years and that he was served with process pursuant to a California Long-Arm Statute.
The court in Kulko rejected the argument that California had personal jurisdiction because the father had agreed to allow his children to live in California with their mother and had in fact sent his daughter there. The court stated:
... to find personal jurisdiction in a state on this basis, merely because the mother was residing there, would discourage parents from entering into reasonable visitation agreements. Moreover, it would arbitrarily subject one parent to suit in any State of the Union where the other parent chose to spend time while having custody of their offspring pursuant to a separation agreement. As we have emphasized:
`The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state ... [I]t is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum state ... Hanson v. Denckla, supra, 357 U.S., at 253, 78 S.Ct., at 1240.
... We cannot accept the proposition that appellant's acquiescence in Ilsa's desire to live with her mother conferred jurisdiction over appellant in the California courts in this action. A father who agrees, in the interests of family harmony and his children's preferences, to allow them to spend more time in California than was required under a separation agreement can hardly be said to have "purposefully availed himself benefits and protections" of California laws. See Shaffer v. Heitner, 433 U.S., at 216, 97 S.Ct., at 2586. [436 U.S. at 93-94, 98 S.Ct. at 1697-98]
The court also noted that the presence in California of the daughter did not give the father the benefit of California's laws in that the services provided by the state were essentially benefits to the child, not the father, and in any event were not benefits *673 that the father purposefully sought for himself. 436 U.S. at 94, n. 7, 98 S.Ct. at 1698. The court in Kulko did not dispute the fact that California had a substantial interest in protecting resident children and in facilitating child support actions on behalf of those children. However, the court found:
... these interests simply do not make California a "fair forum," Shaffer v. Heitner, supra, 433 U.S., at 215, 97 S.Ct., at 2586, in which to require appellant, who derives no personal or commercial benefit from his child's presence in California and who lacks any other relevant contact with the State, either to defend a child support suit or to suffer liability by default. [436 U.S. at 100, 98 S.Ct. at 1701]
The court found that California's legitimate interest in insuring the support of the children residing in California is being served by the state's participation in the Revised Uniform Reciprocal Enforcement of Support Act of 1968, 436 U.S. at 98, 98 S.Ct. at 1700. This statute provides a mechanism for communication between court systems in different states, in order to facilitate the procurement and enforcement of child support decrees where the dependent children reside in a state where the dependent children cannot obtain personal jurisdiction over the defendant.
The court concluded in Kulko that basic considerations of fairness point decisively in favor of the father's state of domicile as the proper forum for the adjudication of the case. The court found that the California Supreme Court failed to heed the court's admonition that the flexible standard of International Shoe does not herald the eventual demise of all restrictions on the personal jurisdiction of state courts. 436 U.S. at 97 and 101, 98 S.Ct. at 1699 and 1701.
The present case presents significant factual distinctions from Kulko. First, after the divorce, both parties left the state of matrimonial domicile, Texas. Secondly, the father has entered the state of Louisiana four times during the past two years in order to exercise his visitation rights with his child.
In Kulko, it was significant that the defendant still resided in the state of the matrimonial domicile and had not entered the state of California for many years. It was the plaintiff who had decided to leave the state of New York and unilaterally move to California. Under that circumstance, the court found that it was basically unfair to require the father to defend a child support action in a foreign forum in which the plaintiff unilaterally chose to live. In the present case, both parties moved from the state of the marital domicile, Texas, after the divorce. Given this circumstance, the same sense of unfairness does not exist in the present case as it did in Kulko.
Secondly, the defendant in the present case has entered the state of Louisiana four times during the past two years to visit with his child. By this action, the defendant has purposefully availed himself of the protection of the laws of Louisiana by choosing to visit his child in this state. There is also no indication that the defendant was only transiently in the state to pick up the child to return to California or another state. By purposefully directing his visitation activities in this state, it should have been foreseeable to the defendant that his actions and activity in this state would subject him to a child support action in a court of this state.
We recognize that by requiring the defendant to defend this action in this state a heavy burden is placed upon the defendant to protect his interest. However, the state of Louisiana and the plaintiff have an equally substantial interest in providing adequate support for the child who lives in this state. Defendant's repeated and purposeful physical presence in this state was related to the subject matter of this action, his parental relationship with his child which includes both rights and responsibilities. Requiring defense of this action in the state of Louisiana is reasonable and compatible with fair play and affords substantial *674 justice to the defendant as well as to the plaintiff mother and the child.
Accordingly, we conclude that the defendant's declinatory exception of lack of jurisdiction over the person of the defendant was properly overruled. The application for supervisory writs is denied.
APPEAL TREATED AS WRIT APPLICATION AND WRIT DENIED.