Frederic B. OPERT, Plaintiff,

v.

Gunter SCHMID, and ATS Engineering Ltd., Defendants.

No. 79 Civ. 5323 (MEL).

United States District Court,
S. D. New York.

March 30, 1982.

**592**

Opert & Herisko, Cambridge, Mass., for plaintiff; Lawrence R. Opert, Cambridge, Mass., of counsel.

Schreiber, Klink, Schreiber, Lehnardt & Carney, P. C., New York City, for defendants; James P. Schreiber, John F. Carney, New York City, of counsel.

LASKER, District Judge.

Frederic B. Opert ("Opert"), a resident of New York, is in the business of managing racing car teams and entering racing cars in various competitions throughout the world. In early January, 1979, Opert was contacted by Gunter Schmid, who inquired on behalf of his company, ATS Engineering Ltd. ("ATS") whether Opert would be interested in managing the ATS Formula One racing team. The two met at the Bicested, England ATS factory and Opert agreed to accept the position. He remained employed by ATS from January 8, 1979 through June 30, 1979.

In this action, Opert alleges that following his separation from ATS, Schmid defamed him in interviews given to Sport Auto, a German automotive magazine, Motor Sport Aktuell, a weekly automotive newspaper published in the German language in in Switzerland, and in conversations with motorsport journalists in August, 1979, in Zandvoort, Holland. Schmid and ATS move to dismiss the complaint under Fed.R.Civ.Pr. 12(b)(1) and (2) for lack of personal jurisdiction and under the doctrine of forum non conveniens.

### I.

ATS contends that there is no personal jurisdiction under New York law over it because it is a corporation organized under the laws of England and doing business there. It asserts that its only contact with New York prior to service of the complaint was its participation in the 1978 and 1979 U.S. Grand Prix competitions at Watkins Glen, New York. It emphasizes that even this participation is not regular, in light of the fact that the site was changed in 1981 to Las Vegas, Nevada. Moreover, ATS argues that the controversy arises out of an essentially European business relationship, noting that Opert was employed in England, he managed the team in races in Argentina, Brazil, South Africa, Spain, Belgium, and Monaco, and that his relationship with ATS terminated following a dispute in France. In addition, ATS asserts that the claim arose out of allegedly defamatory statements made in Germany, Switzerland and Holland.

Opert responds that ATS has systematic and continuing contacts with New York through its required participation in the Watkins Glen Grand Prix events, which Opert asserts are held annually in Watkins Glen. Opert contends that the race was not held in Watkins Glen in 1981 simply because the organizers missed the deadline for paying the Team Owners and that it is expected that the event will be held there in the future. Opert emphasizes the significance of the Watkins Glen race to ATS in that it is one of the sixteen annual Grand Prix competitions in which ATS, as well as other Formula One teams, have an opportunity to win money prizes and score Grand Prix points. Consequently, Opert contends, ATS spends substantial sums preparing for and participating in the event. According to Opert, ATS is therefore doing sufficient business in New York to confer jurisdiction under N.Y.C.P.L.R. § 301.

In addition, Opert maintains that ATS is subject to jurisdiction in New York under N.Y.C.P.L.R. § 302 because the cause of action for defamation arose from business transacted in New York.

## II.

■ A foreign corporation is subject to jurisdiction in New York under C.P.L.R. § 301 for acts unrelated to its instate business activities only if it is doing business through systematic and regular activities in the state. *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 266, 115 N.E. 915 (1917); *Dogan v. Harbert Construction Corp.*, 507 F.Supp. 254, 258 (S.D.N.Y.1980). Applying this standard, it cannot be said that ATS is doing business in New York. The only activity on the part of ATS asserted by Opert is ATS' participation in 1978 and 1979 in the U. S. Grand Prix held in Watkins Glen. For each of these appearances, ATS was in the state for only four days. Moreover, ATS keeps no office in New York, nor does it keep any bank accounts in the state. In fact, it appears that even the brief appearances in the state for the purpose of participating in the Watkins Glen event are not regular, in light of the fact that at least one of the recent events was held in Las Vegas rather than Watkins Glen. Since Opert has not demonstrated systematic and regular ATS activities in New York, he has failed to establish that ATS is subject to jurisdiction here under § 301. *See Irgang v. Pelton & Crane Co.*, 42 Misc.2d 70, 247 N.Y.S.2d 743 (Sup.Ct. Nassau County 1964); 1 Weinstein Korn & Miller, *New York Civil Practice* ¶ 301.16 (1980).

Moreover, Opert's assertion that ATS is subject to jurisdiction under § 302 is without merit. Section 302 in relevant part grants jurisdiction over a nondomiciliary who "transacts any business within the state" "as to a cause of action arising from" that business. Opert's cause of action for defamation, however, arose in Europe, not from ATS' contacts with New York. The allegedly defamatory statements were made in Europe to publications having at most an insignificant circulation in New York and to journalists writing primarily for European publications. The alleged defamation did not relate directly to ATS' participation in the Watkins Glen event, but rather to Opert's employment generally. *Cf. GTP Leisure Products, Inc. v. B–W Footwear Co., Inc.*, 55 A.D.2d 1009, 391 N.Y. S.2d 489 (4th Dept. 1977) (upholding jurisdiction where alleged defamation, while occurring outside New York, related to New York business transaction). And, insofar as Opert claims damage to his reputation in the racing community, the papers make clear that that community is dispersed throughout the world and at the least is not concentrated in New York. Thus, assuming *arguendo* that ATS transacts business in New York within the meaning of § 302, it cannot be said that the cause of action arose out of the New York business. *See American Radio Association v. A. S. Abell Co.*, 58 Misc.2d 483, 296 N.Y.S.2d 21 (N.Y. County 1968).

## III.

■ Schmid, while conceding that he was personally served in New York state, contends that the exercise of personal jurisdiction over him would violate constitutional due process standards and accordingly that § 301 should not be read to authorize such jurisdiction. Schmid argues that he has no contacts with the forum and therefore the only basis for the assertion of jurisdiction over him is his "transient presence" within the state. Schmid relies on the Supreme Court's recent opinions in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) indicating that due process requires adequate contacts among the forum state, the defendant, and the litigation before jurisdiction may be exercised in arguing that jurisdiction based on "transient presence" is unconstitutional.

Schmid's argument is unpersuasive. It is " 'black letter law that personal jurisdiction within its geographical area establishes a court's personal jurisdiction over a defendant.' " *Aluminal Industries v. Newtown*

*Commercial Association,* 89 F.R.D. 326, 329 (S.D.N.Y.1980), *quoting Donald Manter Co., Inc. v. Davis,* 543 F.2d 419 (1st Cir. 1976). Despite the arguments of some commentators, *see e.g.,* Reese & Rosenberg, *Cases and Materials on Conflict of Laws,* 49 (7th Ed. 1978); Cranton, Currie & Kay, *Conflict of Laws,* 575 (2d Ed. 1975), we are unwilling to reject this established jurisdictional principle without direction from higher authority. In this regard, it is worth noting that neither *Shaffer v. Heitner, supra,* nor *World-Wide Volkswagen Corp. v. Woodson, supra,* were cases in which there had been personal service on a defendant within the jurisdiction.

Moreover, even if we were persuaded that personal service within the jurisdiction was not by itself sufficient to establish jurisdiction under due process standards, we are not persuaded that Schmid's contact with New York was so minimal that due process considerations would intervene. This is not a case in which a defendant with absolutely no connection with the forum happens to be served inside the forum during his travels. Here Schmid was in New York while attending the U. S. Grand Prix event. While Schmid asserts that he was there merely as a spectator, it is clear from the nature of his business that his attendance was at the least connected with his financial interest in Formula One racing, as well as his company's participation in the event. His entry in the state, therefore, cannot be characterized as merely transitory. Thus, even were personal service an insufficient basis alone on which to rest personal jurisdiction, we would find jurisdiction here by Schmid's additional and purposeful contacts with the forum.

## IV.

Schmid and ATS next contend that this action should be dismissed under the doctrine of forum non conveniens. Defendants assert that the interests of the litigants favor dismissal on this basis because 1) Schmid and other witnesses are German and the defense witnesses are beyond the jurisdiction of the court, 2) translation of the testimony of defense witnesses and Schmid and of the allegedly defamatory remarks, which were made in the German language and published in German language periodicals, would be necessary, 3) any eventual judgment would have to be enforced in either England or Germany, and 4) Opert would not be greatly inconvenienced by litigation in a European forum since he regularly travels to Europe in connection with the racing car business. They also maintain that the public interest favors dismissal because the defendants and the cause of action have no relation in New York and because, by excepting out of jurisdictional statutes actions involving defamation, New York has expressed its lack of interest in such cases. Lastly, defendants contend that the fact that foreign law will be applied supports dismissal.

In response, Opert argues that the defendants have not demonstrated that an adequate alternative forum exists, and contends that the fact that he resides and works in New York favors retention of jurisdiction here. Opert emphasizes the defendants' contacts with the New York forum and specifically asserts that, contrary to Schmid's papers, Schmid is fluent in the English language. Opert maintains that some of his witnesses reside in New York or the United States and that any of defendants' witnesses coming from the ATS factory speak English.

In determining whether an action should be dismissed for forum non conveniens, the "private interests," such as ease of access to proof, availability of compulsory process, the cost of obtaining willing witnesses' attendance, and the "public interest," such as the problems of court congestion, jury duty, local interest in the controversy and the law to be applied, must be weighed. *Piper Aircraft v. Reyno,* —— U.S. ——, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (plurality opinion); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Manu International, S.A. v. Avon Products, Inc.,* 641 F.2d 62 (2d Cir. 1981). Considering these factors, we conclude that the private and public factors

strongly point to a European forum. First, Opert's assertion that defendants have not demonstrated an alternative adequate forum is unpersuasive since this requirement is ordinarily satisfied "when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft v. Reyno, supra*, —— U.S. at —— n.22, 102 S.Ct. at 265 n.22, *quoting Gulf Oil Corp. v. Gilbert, supra* at 506–07, 67 S.Ct. at 842. Second, while there is a strong presumption in favor of a citizen's choice of forum, *see Piper Aircraft v. Reyno, supra*, —— U.S. at ——, 102 S.Ct. at 265; *Manu International, S.A. v. Avon Products, Inc., supra* at 65, that presumption is overcome here by the considerations favoring transfer mentioned below. With respect to the private interests, it is clear from the fact that each alleged defamatory statement was made in Europe that many of the defendants' witnesses and at least some of the plaintiff's witnesses reside in Europe. In light of the fact that the alleged statements were made in the German language to German-speaking persons and published in German-language periodicals, it is also apparent that translations would be necessary not only for significant parts of the testimony, but also for the allegedly defamatory statements themselves. Similarly, the "public interest" factors point to a West German forum. The case is likely to be judged by West German law. In light of the lack of relationship of the occurrences with New York, the state's interest in the litigation is minimal. Indeed, the circulation of the allegedly defamatory statements in New York was at best insubstantial; they were primarily distributed in West Germany and other European countries. In sum, all the relevant factors except the plaintiffs' choice of forum point to a West Germany forum. In these circumstances, where the burden to defendants of trying the case here is likely to be great and there is little public interest in the case, application of the doctrine of forum non conveniens is appropriate.

\*          \*          \*

Defendants' motion to dismiss the complaint for lack of personal jurisdiction is granted as to ATS and denied as to Schmid.

Defendants' motion to dismiss the action under the doctrine of forum non conveniens is granted on condition that Schmid consent to the jurisdiction of a court in West Germany.

It is so ordered.