Renaldo NEHEMIAH

v.

The ATHLETICS CONGRESS OF the U.S.A. and the International Amateur Athletic Federation.

Appeal of The INTERNATIONAL AMATEUR ATHLETIC FEDERATION.

No. 84–5680.

United States Court of Appeals, Third Circuit.

Argued March 28, 1985.

Decided June 17, 1985.

Marvin E. Frankel (argued), Kramer, Levin, Nessen, Kamin & Frankel, New York City.

Theodore V. Wells, Jr., Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor, Roseland, N.J., for appellant.

Brian J. McMahon (argued), Michael F. Quinn, Crummy, Del Deo, Dolan & Purcell, Newark, N.J., for appellee; Fisher & Stanko, Reading, Pa., of counsel.

Before ALDISERT, Chief Judge, SLOVITER, Circuit Judge, and STAPLETON, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

*Facts and Procedural History*

Plaintiff Renaldo Nehemiah, a renowned hurdler who holds the world's record for the 110 meter hurdles, lost his eligibility to compete in amateur track and field competition when he signed a contract to play professional football. Rule 53 of the International Amateur Athletic Federation (IAAF) provides that an athlete will not be eligible to compete in either domestic or international competition if s/he "has competed in any sport ... for any pecuniary reward." Rule 53 is incorporated and made applicable to the members of The Athletics Congress of the U.S.A., Inc. (TAC) by Rule 11 of the TAC operating rules.

An athlete who has accepted such pecuniary benefits in a sport other than the sport of athletics (track and field) may be declared eligible by the IAAF Council, "if it is satisfied that the practice of that sport is not of direct help for any athletics event." The TAC Board of Review recommended a decision in Nehemiah's favor, as did the United States Olympic Committee, and Nehemiah's membership in TAC was reinstated and his eligibility to compete in domestic amateur athletics was reconfirmed. The IAAF took a contrary position, and as

---

* Hon. Walter K. Stapleton, who was Chief Judge, United States District Court for the District of Delaware, sitting by designation at the time of argument, has since been appointed to the Court of Appeals.

a result TAC has refused to enforce the decision of its own Board of Review.

Nehemiah filed this action against TAC and IAAF seeking to compel arbitration pursuant to Rule 19 of the IAAF Rules. He later amended the complaint to add a request for damages for breach of the alleged agreement between TAC and IAAF to arbitrate and for interference with prospective economic advantage.

Shortly after suit was filed, Primo Nebiolo, the President of IAAF, and Ollan Cassel, the President of TAC and an IAAF Council member, were personally served with the complaint by Nehemiah's attorney at the Meadowlands Sports Complex in East Rutherford, New Jersey, while they were attending the IAAF-sponsored world cross-country championships. Nehemiah was not a participant in the event, since he is not a cross-country runner and never sought entry in those championships.

In opposition to plaintiff's application for a preliminary injunction and in support of IAAF's contention that it could not be subjected to jurisdiction in New Jersey, it filed an affidavit of John Byron Holt, General Secretary of IAAF. The district court denied plaintiff's application for preliminary injunction.[1] It thereafter denied defendants' motion to dismiss for failure to state a claim. In the ruling at issue here, the court denied IAAF's motion to dismiss this action for lack of personal jurisdiction, a motion in which TAC did not join.

The court rejected IAAF's assertion that jurisdiction could not be exercised unless plaintiff showed IAAF had sufficient minimum contacts with New Jersey. The court held that minimum contacts need not be shown with respect to unincorporated associations and that personal service made on IAAF's president established personal jurisdiction over the association. At the re-

quest of IAAF, the court certified its ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and stayed further proceedings. This court granted IAAF permission to appeal.

## II.

### Issue

The application for interlocutory appeal identified the following question:

Whether personal service of process on an officer and member of an unincorporated association while present within the geographical boundaries of a state is sufficient to vest a federal court in that state with personal jurisdiction over the unincorporated association, thereby rendering it unnecessary for the court to adjudicate the disputed issue as to the sufficiency of the unincorporated association's contacts with the state under the standards articulated in *International Shoe* and progeny.

## III.

### Jurisdictional Facts

The relevant facts were set forth in Holt's affidavit and are not in dispute. The IAAF is an unincorporated association comprised of the national governing bodies for amateur athletics (i.e. track and field) in 173 countries. Individual athletes are not members and must generally approach the international federation through their national governing bodies. Among other things, IAAF promulgates regulations concerning membership standards and individual eligibility as well as technical rules governing the conduct of particular athletic events. TAC is the national governing body of the United States. IAAF's headquarters and only offices are in London,

---

**1.** The district court found that Nehemiah had not shown a reasonable probability of eventual success or that irreparable injury will be suffered if his request for relief is not granted. With respect to the merits, the district court held that the arbitration rule on which Nehemiah relied could not by its terms be implemented until after the convening of the 1984 IAAF Congress in July, which was scheduled to take place four months in the future. The district court also stated that the "only harm [Nehemiah] will suffer, if any, is the ineligibility to participate in so-called amateur domestic meets and perhaps the Olympic games." That ruling was not appealed.

and it has at least ten full-time employees. It has no agents or employees based in New Jersey, none of its executives or employees reside or are domiciled in New Jersey, and none of its member bodies are headquartered there. It has never consented to jurisdiction in New Jersey, has never designated an agent for service of process there, has never authorized the Secretary of State of New Jersey to accept process on its behalf, has no contracts with New Jersey domiciliaries, and has never derived any "profits" from activity in New Jersey.

Holt's affidavit asserted that "IAAF's only contacts of any kind with New Jersey occurred when the IAAF lent its name to the world cross-country championships, which took place at the Meadowlands ... Sunday, March 25, 1984." He stated that IAAF was not responsible for the planning or administration of that event, that an IAAF representative spent a day in November 1983 to inspect the Meadowlands cross-country facilities, that in the week preceding the event several IAAF representatives made a similar, brief inspection visit, and that on Sunday, March 25, the day of the event, several IAAF officers spent a few hours at the Meadowlands observing the cross-country races when they were served with process in this suit. Finally, Holt averred that the IAAF derived no profits from the cross-country event, stating "[a]s with all its other events, the IAAF spent whatever revenues it received on the administration of the races, including payment for the accommodations of the participating athletes. Aside from the cross-country event, no other event has taken place in New Jersey under IAAF auspices."

## IV.

### *Applicability of Minimum Contacts Test To Unincorporated Associations*

Under the principles of *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), a state may exercise its long-arm jurisdiction only over a defendant who has "certain minimum contacts with it such that mainte-

nance of the suit does not offend traditional notions of fair play and substantial justice." This analysis is based on the requirements of the Due Process Clause of the Fourteenth Amendment. The entitlement of unincorporated associations to due process has been generally presupposed. *See, e.g., California State Automobile Association Inter-Insurance Bureau v. Maloney,* 341 U.S. 105, 108, 71 S.Ct. 601, 603, 95 L.Ed. 788 (1951); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 140–41, 71 S.Ct. 624, 632, 95 L.Ed. 817 (1951); *Barrett v. United States,* 689 F.2d 324, 333 (2d Cir.1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). It follows that when the district court stated it found persuasive plaintiff's assertion "that with respect to *unincorporated associations,* minimum contacts need not be shown", (emphasis in original), it could not have meant that the traditional inquiry into minimum contacts need not be made when jurisdiction was effected through application of a long-arm statute. In *International Shoe* itself, the Court stated that the holding was applicable to individual or corporate defendants, *see* 326 U.S. at 319, 66 S.Ct. at 159 and more recently the Court in *Shaffer v. Heitner,* 433 U.S. 186, 204 n. 19, 97 S.Ct. 2569, 2579 n. 19, 53 L.Ed.2d 683 (1977), noted that "the *International Shoe* Court believed that the standard it was setting forth governed actions against natural persons as well as corporations, and we see no reason to disagree."

Nehemiah does not dispute that where service of process has been accomplished through application of a long-arm statute, the *International Shoe* doctrine requiring an inquiry into the contacts of the defendant with the jurisdiction has been applied to unincorporated entities. *See Loumar, Inc. v. Smith,* 698 F.2d 759, 763–64 (5th Cir. 1983) (partnership); *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 588–89 (3d Cir.1982) (non-resident law partnership); *Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1207 (9th Cir.1980) (partnership); *Pearson v.*

*Furnco Construction Co.*, 563 F.2d 815, 819 (7th Cir.1977) (unincorporated association).

The district court apparently considered this line of authority to be inapplicable, since it found that the personal service on Nebiolo and Cassel was determinative of personal jurisdiction over IAAF. It analogized an unincorporated association such as IAAF to a partnership, referred to cases holding that service in the forum state on a partner confers personal jurisdiction over the partnership or association, and concluded, "[J]urisdiction exists even though IAAF, through its agent, arguably had only a transient presence within this forum, which would not satisfy the 'minimum contacts' test required of foreign corporate defendants."

In arguing that the district court erred in holding that the rule of *International Shoe* was inapplicable to an unincorporated association in these circumstances, IAAF contends that there is "square and sufficient authority" in two prior cases of this court. It refers to *Pavlovscak v. Lewis*, 274 F.2d 523 (3d Cir.1959), *reh'g in banc denied, id.* at 526 (per curiam) and *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587 (3d Cir. 1982), neither of which was cited by the district court. In *Pavlovscak* we considered whether there was jurisdiction over a welfare and retirement fund, described as a business organization in the nature of an unincorporated association, whose agent had been personally served with process within the forum state. In holding that there were adequate contacts to satisfy due process, the court examined the various activities of the fund within the state. Although the court did not address whether service on the agent alone would have been sufficient, presumably it would not have analyzed the issue by reference to other contacts had it considered service determinative.

The *Reliance Steel* case, which the IAAF argues "would end the inquiry," is more tenuous authority. Although the court applied a minimum contacts test to a non-resi-

dent law partnership, there was no personal in-state service on an agent of the defendant.

Similarly, the other cases cited by appellant for the application of minimum contacts analysis to personal jurisdiction over partnerships also involve long-arm service rather than personal service of an agent within the forum. The only appellate case relied on by the district court to support its conclusion that jurisdiction over an unincorporated association could be obtained through the transient presence of an agent is ambiguous on this issue. Although it may be possible to read *Donald Manter Co. v. Davis*, 543 F.2d 419 (1st Cir.1976), as holding that personal service on an individual member of a partnership is sufficient to confer personal jurisdiction over the partnership, there is also language in the opinion that suggests that the service created personal jurisdiction only over the partner served. *Id.* at 420. *See also Long v. Baldt*, 464 F.Supp. 269, 275 n. 8 (D.S.C. 1979). There is one district court case that does support the position of Nehemiah and the conclusion of the district court, *see Aluminal Industries, Inc. v. Newtown Commercial Associates*, 89 F.R.D. 326, 329 (S.D.N.Y.1980), but the absence of any definitive appellate decision on this precise issue is surprising.

Whether or not our earlier decision in *Pavlovscak* is controlling, we now conclude that due process considerations preclude effecting personal jurisdiction over an unincorporated association merely by in-state service on its agent. It is arguable that the transient presence basis for jurisdiction over any defendant, including an individual, is no longer viable. Although leading scholars had questioned the continued persuasiveness of this jurisdictional doctrine as relying on an outmoded concept of power, *see* Ehrenzweig, *The Transient Rule of Personal Jurisdiction: The "Power" Myth and Forum Conveniens*, 65 Yale L.J. 289 (1956); Soboloff, *Jurisdiction of State Courts over Non-Residents in our Federal System*, 43 Cornell L.Q. 196, 208 (1957); von Mehren & Trautman, *Jurisdiction to*

*Adjudicate: A Suggested Analysis*, 79 Harv.L.Rev. 1121, 1137, 1177–1178 (1966), the Supreme Court's approval of the doctrine in *International Shoe*, 326 U.S. at 315–16, 66 S.Ct. at 157–58, foreclosed judicial reconsideration. The Court's more recent opinion in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), signalled its reexamination of some of the traditional underpinnings of jurisdiction.

In *Shaffer*, the Court held that the mere presence of property owned by a non-resident defendant in the forum state was insufficient to support *quasi in rem* jurisdiction over a claim unrelated to the property, and required that the minimum contacts test be used to evaluate the existence of all claims of *in rem* jurisdiction. Although in *Shaffer* the Supreme Court did not specifically extend its holding to prohibit *in personam* jurisdiction based merely on service of process on a non-resident defendant within the forum state on a matter unrelated to the cause of action, it used sweeping language. For example, it stated that *"all* assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Id.* at 212, 97 S.Ct. at 2584 (emphasis added). If the mere presence of property cannot support quasi *in rem* jurisdiction, it is difficult to find a basis in logic and fairness to conclude that the more fleeting physical presence of a non-resident person can support personal jurisdiction. A growing number of commentators have reached that conclusion. Abrams, *Power, Convenience, and the Elimination of Personal Jurisdiction in the Federal Courts*, 58 Ind.L.J. 1, 18, 25 (1982); Posnak, *A Uniform Approach to Judicial Jurisdiction After* World-Wide *and the Abolition of the "Gotcha" Theory*, 30 Emory L.J. 729, 743–48 (1981); Vernon, *Single-Factor Bases of In Personam Jurisdiction—A Speculation on the Impact of Shaffer v. Heitner*, 1978 Wash.U.L.Q. 273, 302–03.

Even if the Court were to acknowledge the historical entrenchment of the doctrine and thereby carve a *sui generis* niche for jurisdiction over the individual who purposefully enters the jurisdiction and is served, *see, e.g.*, Glen, *An Analysis of "Mere Presence" and Other Traditional Basis of Jurisdiction*, 45 Brooklyn L.Rev. 607, 613–14 (1978), service on an agent for an unincorporated association presents a far different situation. As Nehemiah concedes, his "power" argument would subject a local union to jurisdiction in a state across the country for an unrelated claim through service of one of its union members or officers making an isolated foray there. It is just as unreasonable to request the union to defend the suit in that forum as it would be were it a corporation and service had been made on its officer or employee. Since it is undisputed that mere service on a corporate agent cannot establish personal jurisdiction without a minimum contacts inquiry, we can find no cogent reason not to apply the same principle to an unincorporated association.[2]

The unincorporated association, like the corporation, can act only through its agents. In other contexts, they have been treated the same. Judge Learned Hand analogized them for purposes of venue, *see, e.g.*, *Sperry Products, Inc. v. Association of American Railroads*, 132 F.2d 408, 411 (2d Cir.1942), *cert. denied*, 319 U.S. 744, 63 S.Ct. 1031, 87 L.Ed. 1700 (1943). *Accord Rutland Ry. Corp. v. Brotherhood of Locomotive Engineers*, 307 F.2d 21, 29 (2d Cir.1962), *cert. denied*, 372 U.S. 954, 83 S.Ct. 949, 9 L.Ed.2d 978 (1963), and they are treated the same for service of process, *see* Fed.R.Civ.P. 4(d)(3).

■■ We conclude therefore that neither logic nor history supports personal jurisdiction over an unincorporated association solely on the basis of service on its agent within the forum. The district court erred in holding that it was not required to make an inquiry into the quality and nature of contacts between the IAAF and New

2. We need not decide here whether a small personal service partnership is more closely analogous to an individual or an unincorporated association such as IAAF.

Jersey to determine whether they satisfied the minimum contacts test of *International Shoe.*

V.

*Propriety of Discovery*

■ IAAF argues that the assertion of jurisdiction over it is so facially excessive that we should direct the district court to dismiss the action without any discovery. We reject IAAF's invitation to pretermit Nehemiah's opportunity to garner the necessary facts to establish jurisdiction and to prove his case. It is apparent the district court never reached the question whether IAAF had adequate minimum contacts with New Jersey. Nor do we find persuasive IAAF's argument that it would be "intolerable" as a matter of domestic and international law to subject it to jurisdiction *anywhere* in the United States.

IAAF's counsel conceded at oral argument that the President of IAAF travels around the world in a ceremonial and administrative capacity. Its regulations are also exported around the world. Its effect in the United States through its telexed communications may be as direct as if its officers made regular visits in the exercise of its regulatory authority over its members. *See, e.g., Siegling v. International Association of Approved Basketball Officials, Inc.,* 262 F.Supp. 441, 444–46 (D.S.C. 1966).

Moreover, Nehemiah has suggested that he can establish jurisdiction over IAAF on the ground that its member TAC is the United States agent through which IAAF enforces its rules and regulations. TAC has conceded that it is subject to jurisdiction in New Jersey. The Tenth Circuit recently held that jurisdiction over FIBA, the international association regulating amateur basketball in some 150 countries, which apparently operates in a fashion similar to IAAF, might be established through actions taken on its behalf by its United States constituent. *See Behagen v. Ama-*

*teur Basketball Association of the United States,* 744 F.2d 731, 733–35 (10th Cir. 1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985).

Nehemiah argues that to show jurisdiction, he needs discovery, *inter alia,* as to the number of United States athletes affected by the IAAF regulations, rulings and decisions, and the number of United States events it sanctions, directs and controls either alone or through its agents. In *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances,* 723 F.2d 357, 362 (3d Cir.1983), we directed that a trial court should permit discovery on the question of jurisdiction unless the plaintiff's claim is "clearly frivolous". We see nothing frivolous about Nehemiah's claim of jurisdiction, although, of course, we express no opinion on the ultimate issue.

Finally, as IAAF has repeatedly reminded us, this case has now been pending for more than a year. Because discovery was stayed by the district court pending the appeal, Nehemiah is now a year older. The running of time may affect an athlete more adversely than many other litigants. This may be an appropriate case for the district court, in its discretion, to permit discovery to proceed simultaneously on jurisdiction and on the merits.[3] Indeed, there seems to be some overlap in the issues since the manner in which IAAF controlled TAC's decision vis-a-vis Nehemiah, in opposition to the position of both TAC's own Board and the United States Olympic Committee, seems to have pertinence to both. Of course, we are confident that the district court will be even handed to all parties in allowing discovery.

For the foregoing reasons, we will vacate the order of the district court denying appellant's motion to dismiss and will remand this matter for further proceedings consistent with this opinion. Each party to bear its own costs.

---

**3.** Neither party has commented on the relevance to the merits, if any, of the fact that the July, 1984 meetings have presumably been held, *see supra* note 1.