The HAROLD M. PITMAN
COMPANY, Plaintiff,

v.

TYPECRAFT SOFTWARE LTD., Thomas O'Connor, and Rangegrove Computing Ltd., Defendants.

No. 84 C 3028.

United States District Court,
N.D. Illinois, E.D.

Jan. 16, 1986.

Donald W. Rupert, Kirkland & Ellis, Chicago, Ill., for plaintiff.

Kevin M. Flynn, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This matter is before the court on the motion of defendants Typecraft Software, Ltd. ("Typecraft") and Thomas O'Connor to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.[1] For the reasons stated below, the court grants defendants' motion to dismiss.

### I. *Facts*

Plaintiff Harold M. Pitman Company ("Pitman") is an Illinois corporation with its principal place of business in New Jersey. Pitman distributes, sells and services equipment used in the printing industry.

Typecraft is a company incorporated under the laws of the United Kingdom. Located in London, Typecraft develops, manufactures and sells computer software and hardware for use in the printing industry. Mr. O'Connor is currently an officer, director and a ninety percent shareholder of Typecraft. Rangegrove Computed, Ltd. ("Rangegrove") is the former corporate name for Typecraft, and both names describe the same entity.

This suit arises out of an exclusive distributorship agreement between Pitman and Typecraft Systems (Derby), Ltd. ("Systems"), a corporation not named as a defendant in this action. In July, 1982, Systems entered into an agreement with Pitman, giving Pitman the exclusive right to distribute the Typecraft Phototypesetting System in the United States. In August, 1982, Systems entered into another agreement with Pitman, under which Systems agreed to pay that portion of the salary of Pitman's employee, Mr. Ronald Johnson, that exceeded $3,000.00 per month. Mr. O'Connor negotiated this agreement with Pitman on behalf of Systems.

In October, 1982, Top Business Systems (Nottingham), Ltd. ("Top Business") assumed the worldwide marketing and distribution rights for the Typecraft Phototypesetting System. Mr. O'Connor, then Sales Director for Top Business, wrote Pitman in October, 1982, confirming that Pitman's distributorship agreement with Systems was effective between Pitman and Top Business. In October, 1983, Top Business sold the marketing and distribution rights to the Typecraft Phototypesetting System to Rangegrove. Mr. O'Connor signed the sales agreement both as a representative and a personal guarantor of Rangegrove.

---

**1.** The court referred this motion to a Magistrate for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Defendants Typecraft and Mr. O'Connor filed objections to the Magistrate's Report and Recommendation. Under 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b), this court must make a *de novo* determination of those portions of the Report and Recommendation to which the objections are made, and this court has the discretion to accept, reject or modify, in whole or in part, the Magistrate's Report and Recommendation. For the reasons set forth in this memorandum, the court does not adopt the Report and Recommendation of the Magistrate in this case.

On April 6, 1984, Pitman filed this action in federal court, alleging jurisdiction based on diversity of citizenship. In the complaint, Pitman alleges that when the defendants bought the phototypesetting system, they assumed the rights, obligations and liabilities of the distributorship agreement between Top Business and Pitman. Pitman contends that the defendants have breached both the exclusive distributorship agreement and the agreement regarding Mr. Johnson's salary. Pitman also contends that defendants misrepresented material facts relating to the distributorship agreement, and that defendants misused Pitman's confidential business information.[2]

In April, 1984, Mr. O'Connor traveled from England to attend "Type-X 1984," an annual three-day exhibition of companies in the printing industry. On April 6, 1984, the first day of the exhibition, Mr. O'Connor was served with the summons and complaint in this action, on behalf of himself and as an agent for Typecraft. Typecraft had a booth at the exhibition and was listed in the Directory of Exhibitors.[3] During the show, Typecraft distributed a brochure describing one of its products.[4] Also, Mr. O'Connor contacted several companies at the exhibition and explored possible distribution arrangements with them. Mr. O'Connor scheduled an appointment with one company to meet with Typecraft in London in order to evaluate Typecraft's products. In addition, Mr. O'Connor negotiated with several major manufacturers of phototypesetting systems for incorporation of Typecraft products into their systems.[5]

Defendants now move for dismissal based on lack of personal jurisdiction. Essentially, Mr. O'Connor and Typecraft assert that the court's exercise of personal jurisdiction over them will not satisfy the due process clause of the fourteenth amendment unless Pitman can demonstrate that defendants have had "minimum contacts" with this jurisdiction, as required under *International Shoe Corp. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). Mr. O'Connor and Typecraft assert that their "transient presence" in Illinois is not sufficient to meet the *International Shoe* and *Shaffer* minimum contacts requirement.

Pitman, on the other hand, asserts that the court may properly exercise personal jurisdiction over the defendants, because the defendants were present in Illinois at the time service of process was made. According to Pitman, when defendants are personally served within the jurisdiction,

2. Pitman does not assert, in its complaint or memorandum, that any of the following events occurred in Illinois: (1) the negotiation, execution and alleged breach of the agreements; (2) the misrepresentation of material facts relating to the distributorship agreement; and (3) the misuse of Pitman's confidential business information.

3. Affidavit of Jack A. Maltby, National Marketing Manager of Pitman, and Exhibit "A" to the Maltby Affidavit, attached to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Memorandum"). The court may rely on affidavits when determining the propriety of a dismissal for lack of jurisdiction. *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir.1971).

4. Exhibit "F" to the Maltby Affidavit, attached to Plaintiff's Memorandum. In its memorandum, Pitman asserts that Typecraft distributed brochures for many of its products. Plaintiff's Memorandum, p. 6. Pitman submits these brochures as Exhibits "B"–"F" to the Maltby Affidavit, attached to its memorandum. In their Reply to Pitman's Memorandum in Opposition to Defendants' Motion to Dismiss ("Defendants' Reply"), defendants contend, and the court now finds, that Exhibits "B," "C" and "E" describe products offered by Typecraft (UK) Limited, a British corporation separate and distinct from Typecraft Software, Ltd., the defendant in this suit. Defendants' Reply, p. 3. In addition, the court notes that Exhibits "C" and "E" are identical.

5. The court draws these facts from Exhibit "3" to the Plaintiff's Memorandum. Exhibit "3" is a confidential report Mr. O'Connor prepared for the British Overseas Trade Board, the governmental agency which funded Mr. O'Connor's trip to the "Type-X 1984" Exhibition. Pitman filed the report under seal, pursuant to the court's September 18, 1984 protective order.

personal jurisdiction is proper regardless of the existence of "minimum contacts" between the defendant, the litigation and the forum state. Alternatively, Pitman asserts that, assuming the minimum contacts rationale of *International Shoe* and *Shaffer* applies, the defendants' contacts with Illinois are sufficient for jurisdictional purposes.

## II. *Motion to Dismiss for Lack of Personal Jurisdiction*

■ A federal court has personal jurisdiction in a diversity case only if the forum state would have jurisdiction. *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 589 (7th Cir.1984); *Deluxe Ice Cream Company v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1212 (7th Cir.1984); Fed.R.Civ.P. 4(e). The plaintiff bears the burden of proof on the jurisdictional issue. *Grafon Corp. v. Hausermann*, 602 F.2d 781 (7th Cir.1979). Plaintiff's burden of proof is two-fold: it must establish the existence of jurisdiction under Illinois law, and it must show that exercise of jurisdiction over the defendant will not offend the due process clause of the fourteenth amendment.

### A. *Peronal Jurisdiction Under Illinois Law*

In its complaint and its response to defendants' motion to dismiss, Pitman does not specify which Illinois statutes or cases it relies upon for jurisdiction under Illinois law. From the facts of the case, the only jurisdictional bases Pitman may rely on are Ill.Rev.Stat. ch. 110, para. 2–203(a)(1), for personal jurisdiction over Mr. O'Connor, and Ill.Rev.Stat. ch. 110, para. 2–204, for personal jurisdiction over Typecraft.[6]

■ Section 2–203(a)(1) provides that "service of a summons upon an individual defendant shall be made (1) by leaving a copy thereof with the defendant personally...." Illinois cases interpreting section 2–203(a)(1) do not appear to impose an additional requirement of minimum contacts between the defendant, the litigation and the forum, separate from the minimum contacts requirement of the due process clause of the fourteenth amendment. Service upon Mr. O'Connor, therefore, comports with the requirements of Illinois law for personal jurisdiction over Mr. O'Connor.

Section 2–204 provides that service upon a private corporation may be made "(1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State...." The Illinois Supreme Court has held that Illinois courts may not assert jurisdiction over nonresident corporations not licensed in Illinois under section 2–204, unless such corporations "do business" in Illinois. *Maunder v. De Havilland Aircraft of Canada, Ltd.*, 102 Ill.2d 342, 350, 80 Ill.Dec. 765, 466 N.E.2d 217 (1984), *cert. denied sub nom, De Havilland Aircraft of Canada, Ltd. v. Maunder*, —— U.S. ——, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). The Illinois Supreme Court has also held that this "doing business" requirement is not equivalent to the minimum contacts requirement for due process, but it is a separate state law requirement within the outer limits of the due process standard. *Cook Associates, Inc. v. Lexington United Corporation*, 87 Ill.2d 190, 201, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981).

*Cook* involved facts very similar to those in the present case. In *Cook*, the defendant corporation, Lexington, was a Delaware corporation not licensed to do business in Illinois. Lexington's president was served with process while attending a housewares exhibition in Chicago. Lexington took orders at the exhibition, as it had at two other trade shows in Chicago in 1976 and 1977; however, on all three occasions, the orders amounted to less than $50,000.00, and Lexington accepted the offers later, at its St. Louis office. Lexington's other contacts with Illinois were minimal. Lexington did not have an office or employee in Illinois. It did not have an

---

6. The Illinois long-arm statute, Ill.Rev.Stat. ch. 110, para. 2–209, does not apply because Pitman's claims do not arise out of any business transacted, or tort committed, in Illinois. *See supra* n. 2.

Illinois telephone number, nor did it advertise in Illinois, except in connection with the Chicago trade exhibitions. Lexington sold its merchandise in Illinois, but through an independent manufacturer's representative who sold the merchandise of other manufacturers and worked strictly on a commission basis.

Based on this evidence, the Illinois Supreme Court held that Lexington was not amenable to the jurisdiction of the court under either the Illinois long-arm statute or the doctrine of submitting to jurisdiction by virtue of "doing business" in Illinois. With regard to the "doing business" doctrine, the court stated:

> The "doing business" approach, however, developed and was accepted as a means to obtain personal jurisdiction over foreign corporations. This court held that a foreign corporation doing business in Illinois was constructively present in this State and its assent to service upon an agent in Illinois could be implied under those circumstances. The corporation, therefore, could be served personally in Illinois in the same manner as a domestic corporation could be. *If the foreign corporation was not doing business in Illinois, even personal service upon an officer of the company who was physically present in this State as a visitor, for example, did not confer jurisdiction over the nonresident* .... The doing-business standard, of course, continues to be used in determining questions of jurisdiction over foreign corporations not licensed in Illinois....

*Cook*, 87 Ill.2d at 199–200, 57 Ill.Dec. 730, 429 N.E.2d 847 (citations omitted and emphasis added). The court then proceeded to examine Lexington's activities according to the "doing business" test, as applied by Illinois courts.

The Illinois Supreme Court conceded the lack of an all-inclusive test for "doing business" in Illinois. However, the Court found that, in general, "doing business" means "conducting business in Illinois 'of such a character and extent as to warrant the inference that the corporation has sub-

jected itself to the jurisdiction and laws of the district in which it is served and in which it is bound to appear when a proper agent has been served with process.' " *Id.* at 201, 57 Ill.Dec. 730, 429 N.E.2d 847 (quoting *Pembleton v. Illinois Commercial Men's Association*, 289 Ill. 99, 104, 124 N.E.2d 355 (1919), *appeal dismissed*, 253 U.S. 499, 40 S.Ct. 483, 64 L.Ed. 1032 (1919)). The court concluded that "doing business" requires "activities greater than solicitation" and "a regularity of activities in Illinois that is absent in the case of Lexington." *Id.* at 201, 202, 57 Ill.Dec. 730, 429 N.E.2d 847.

■ If Lexington's contacts were insufficient to amount to "doing business," Typecraft's contacts most certainly do not amount to "doing business" under Illinois law. Lexington solicited orders at three different trade exhibitions in Chicago and sold merchandise in Illinois through an independent manufacturer's representative. By contrast, Typecraft was served the first day that it ever appeared in Illinois for any purpose. Typecraft was served while attending the first day of a trade exhibition at which it merely contacted companies to explore possible distribution arrangements, scheduled a London appointment with one potential distributor, and negotiated with manufacturers of phototypesetting systems for possible incorporation of Typecraft products. Typecraft received no orders for its products. At the very most, Typecraft's conduct at the "Type-X 1984" Exhibition only amounts to "mere solicitation." Aside from the "Type-X 1984" Exhibition, Typecraft apparently has no contacts with Illinois. Pitman does not allege that Typecraft distributes its products in Illinois through an employee or an independent manufacturer's representative. Also, Pitman does not allege that Typecraft has an office, an employee, or a telephone listing in Illinois, or any other contacts with that state.

On this evidence, the court finds that Pitman has failed to establish that Typecraft was doing business in Illinois at the time of service, as required for a proper

exercise of personal jurisdiction over Typecraft under Illinois law. The court therefore grants Typecraft's motion to dismiss for lack of personal jurisdiction. The only remaining issue is whether due process precludes the exercise of personal jurisdiction over Mr. O'Connor.

### B. Personal Jurisdiction Under the Due Process Clause of the Fourteenth Amendment

Pitman contends that the due process minimum contacts doctrine of *International Shoe* and *Shaffer* does not apply in this case because Mr. O'Connor was personally served while present, albeit transiently, in Illinois. Alternatively, Pitman asserts that, if *International Shoe* and *Shaffer* do apply, Mr. O'Connor's contacts with Illinois amount to the minimum contacts required under those decisions.

Pitman cites three district court cases in support of its contention that *International Shoe* and *Shaffer* do not apply when there is personal service within the jurisdiction. *Opert v. Schmid*, 535 F.Supp. 591 (S.D.N.Y.1982); *Ruggierri v. General Well Service, Inc.*, 535 F.Supp. 525 (D.Colo. 1982); *Aluminal Industries v. Newton Commercial Associates*, 89 F.R.D. 326 (S.D.N.Y.1980). Neither the holding nor the reasoning in any of these cases control or persuade the court here.

In *Opert*, a New York resident brought suit in a New York federal court against an English corporation and its owner, based on alleged defamatory statements made and circulated in Europe. The owner of the corporation, Mr. Schmid, was personally served in New York while attending the U.S. Grand Prix. The court found that the corporation was not "doing business" in New York, and the claim against the corporation did not arise from the corporation's transaction of business within the state.

Therefore, the court could not exercise personal jurisdiction over the corporation.

As for Mr. Schmid, however, the court found that it could properly exercise personal jurisdiction. The court stated that personal service on a defendant while present, albeit transiently, in the jurisdiction establishes a court's personal jurisdiction over such a defendant. As support for this contention, the court cited *Aluminal*, discussed *supra*, and *Donald Manter Co., Inc. v. Davis*, 543 F.2d 419 (1st Cir.1976), a pre-*Shaffer* case. The court summarily dismissed the reasoning of the Supreme Court in *Shaffer* and *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), as failing to provide direction on this question. The court, without any analysis, simply found these cases wholly inapplicable because they were not cases in which the defendant was personally served within the jurisdiction. In any event, the court went on to hold that even if personal service within the jurisdiction is not by itself sufficient to establish jurisdiction under due process standards, Mr. Schmid's contacts with the jurisdiction were not "so minimal that due process considerations would intervene." *Opert*, 535 F.Supp. at 594.[7]

In *Ruggieri*, the court examined the various bases for personal jurisdiction. The court discussed personal service of a defendant within the jurisdiction; however, this discussion was mere dicta by the court. The facts and the holding of the *Ruggieri* court dealt only with jurisdiction under Colorado's long-arm statute.

In *Aluminal*, nonresident defendant Dennis S. Tinsky was served with process while transiently in a New York airport. Mr. Tinsky was served on behalf of himself and co-defendant Newtown Commercial Associates ("Newtown"), a limited partnership of which Mr. Tinsky was the sole managing partner. Relying on *Donald*

---

**7.** In *Opert*, the owner was in New York merely to attend the U.S. Grand Prix, and yet, the *Opert* court found the owner's contacts with New York to be sufficient to satisfy due process. The court noted that Schmid's attendance was connected with his financial interest, and his company's participation, in Formula One racing. Without reliance on any authority, the court held Schmid's minimal contacts, because they were "purposeful," sufficient to satisfy due process.

*Manter*, a pre-*Shaffer* decision, the court found personal jurisdiction over Mr. Tinsky and Newtown proper, based on service of process within the state.[8] The *Aluminal* court, like the *Opert* court, summarily dismissed the defendants' reliance on *Shaffer*, insisting that *"Shaffer* did not expand or modify existing in personam jurisdiction principles...." *Aluminal*, 89 F.R.D. at 329.

*Aluminal* fails to persuade the court, not only because of its lack of analysis, but also because the Third Circuit disapproved of the *Aluminal* and *Donald Manter* decisions in *Nehemiah v. Athletics Congress of U.S.A.*, 765 F.2d 42 (3rd Cir.1985). *Nehemiah* held that due process considerations preclude effecting personal jurisdiction over an unincorporated association merely by service on an agent transiently present in the state. *Id.* at 46. In so holding, the court found *Donald Manter* "ambiguous" on this issue, and the court cited *Aluminal* as a lower court decision contradictory to its holding.

Thus, the three cases Pitman cited for support provide little guidance for the court here. In none of these cases did the court seriously analyze *Shaffer* and its effect on the transient jurisdiction doctrine. It is to *Shaffer* that this court now turns.

In *Shaffer*, the plaintiff, Mr. Heitner, brought a shareholder's derivative suit in a Delaware state court against Greyhound Corporation, a Delaware corporation. Mr. Heitner also sued Greyhound's wholly-owned subsidiary, and 28 present or former officers and directors of Greyhound and its subsidiary. Mr. Heitner alleged that the individual defendants had violated their duties to Greyhound by causing it and its subsidiary to engage in actions that result-ed in a judgment against Greyhound for substantial damages in a private antitrust suit and a large fine in a criminal contempt action. The Delaware state court acquired quasi in rem jurisdiction of the case by sequestering the property of the defendants in Delaware, pursuant to a state sequestration statute. Defendants' property consisted, for the most part, of Greyhound stock and options. Under the sequestration statute, the defendants had two options upon sequestration: (1) they could make a special appearance to contest jurisdiction only; or (2) they could enter a general appearance and defend on the merits, thereby subjecting themselves to in personam liability.

The Supreme Court held that the Delaware sequestration statute violated the due process clause of the fourteenth amendment because it permitted the state courts to exercise quasi in rem jurisdiction despite the absence of sufficient contacts between the defendants, the litigation and the forum. In adopting the minimum contacts test for in rem and quasi in rem actions, the Supreme Court examined the evolution of the doctrinal foundations of jurisdiction from *Pennoyer v. Neff*, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1878), to *International Shoe*.

The Court began with the two jurisdictional principles of *Pennoyer:* (1) that every state has exclusive jurisdiction over persons and property within its territory; and (2) that no state has direct jurisdiction over persons and property outside its jurisdiction. *Shaffer*, 433 U.S. at 197, 97 S.Ct. at 2576. The Court then outlined the development away from those principles, highlighting its opinion in *International Shoe*.

---

**8.** The *Aluminal* court also cited, for support, 4 Wright & Miller, Federal Practice and Procedure: Civil § 1064 at 209 (1969). That section provides in part:

As a result of the *Pennoyer* [*v. Neff*, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1877)] decision, it became clear that even if defendant's presence within the state is transitory, perhaps only long enough to allow him to be served with process, it is sufficient to endow the court with jurisdiction.

*Id.* After the *Shaffer* decision, however, Wright & Miller amended § 1064, so that it now provides:

The Supreme Court's decision in *Shaffer v. Heitner* adopting the minimum contacts test for in rem and quasi in rem jurisdiction casts considerable doubt on the continued vitality of transient jurisdiction.

4 Wright & Miller, *supra,* § 1064, Pocket Part at 40 (1985) (footnotes omitted).

In *International Shoe*, the Court held that "the relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States on which the rules of *Pennoyer* rest, [is] the central concern of the inquiry into personal jurisdiction." *Shaffer*, 433 U.S. at 204, 97 S.Ct. at 2580 (footnote omitted).

In light of *International Shoe*, the *Shaffer* Court concluded that there had been a "collapse of the in personam wing of *Pennoyer*." *Id.* The Court then weakened the in rem wing of *Pennoyer*, holding that the minimum contacts standard set forth in *International Shoe* governs actions in rem as well as in personam.

As *Pitman* points out, neither *International Shoe* nor *Shaffer* specifically involved the question of whether personal service within the jurisdiction suffices for in personam jurisdiction over individuals. However, in *Shaffer*, the Court clearly expressed its preference for "assessing assertions of jurisdiction by a single standard." *Shaffer*, 433 U.S. at 209, 97 S.Ct. at 2582. The Court concluded, unequivocally, "that all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." *Shaffer*, 433 U.S. at 212, 97 S.Ct. at 2584.

We now hold that, under *Shaffer*, mere service of process upon a defendant transiently present in the jurisdiction does not vest a state with personal jurisdiction over the defendant. Personal service within the jurisdiction is not the litmus test for proper in personam jurisdiction. Rather, the test is whether the defendant has had minimum contacts with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 317, 66 S.Ct. at 158.

In reaching this conclusion, the court is not without support. Several commentators have questioned the vitality of the transient jurisdiction doctrine after *Shaffer*. *See* 4 Wright and Miller, *supra*, § 1064, Pocket Part at 40 (1985); Bernst-ine, *Shaffer v. Heitner: A Death Warrant for the Transient Rule of In Personam Jurisdiction*, 25 Vill.L.Rev. 38 (1979). *See also Nehemiah*, 765 F.2d at 46–47, and articles cited therein.

Also, in a case involving facts almost identical to those in the instant case, *Amusement Equipment, Inc. v. Mordelt*, 595 F.Supp. 125 (E.D.La.1984), the court held that, under *Shaffer*, personal service upon defendants is not sufficient to justify the assertion of personal jurisdiction over such defendants. *Mordelt*, 595 F.Supp. at 128 n. 3. In *Mordelt*, the plaintiff brought a breach of contract action in a Louisiana federal district court against a West German corporation and Carl Mordelt, the corporation's general manager and a resident of West Germany. On November 11, 1983, Mr. Mordelt was served with process, on behalf of himself and his employer, while attending a trade show in New Orleans. The plaintiff asserted that the court could properly exercise personal jurisdiction over the defendants because they had been personally served within the jurisdiction, and, alternatively, they "transacted business" in the jurisdiction from which the cause of action arose.

The court concluded that the due process clause and, thus, the minimum contacts requirement, limit the state's jurisdictional reach under both long-arm and transient jurisdiction. *Mordelt*, 595 F.Supp. at 128. According to the court, "[i]nsofar as the transient jurisdiction doctrine runs afoul of the minimum contacts test for personal jurisdiction framed by *International Shoe*, the doctrine, and its obsolete theoretical underpinnings, must give way." *Id.* at 128 n. 3.

*Nehemiah*, 765 F.2d 42, also supports this court's holding. As noted above, *Nehemiah* held that a court could not obtain jurisdiction over an unincorporated association merely by service upon an agent transiently present within the state. The *Nehemiah* court, relying on *Shaffer* and the similarity between corporations and unincorporated associations, extended the application of the *International Shoe* mini-

mum contacts requirement to unincorporated associations. *Id.* at 47. The court questioned whether *Shaffer* dictates a further extension to individuals served with process within the forum, but did not so hold, as that set of facts was not before the court. *Id.* at 46–47.

In addition to commentaries and case law, public policy supports the court's decision that the minimum contacts requirement applies to transient jurisdiction cases. Under *Shaffer*, a court may not sequester a defendant's property and assert in rem or quasi in rem jurisdiction unless there are minimum contacts between the defendant, the litigation and the forum. Were the court to hold that minimum contacts need not be present for an exercise of in personam jurisdiction over a defendant present in the jurisdiction when served, the court would thereby accord less protection to an individual defendant than to his or her property within the state. Surely the *Shaffer* Court did not intend such an illogical and unfair result. *See Nehemiah*, 765 F.2d at 47. Moreover, transient jurisdiction may constitute an unwarranted and undesirable burden on commerce.

Having found that the minimum contacts requirement must be satisfied even where a defendant is personally served within the jurisdiction, the court now examines whether such minimum contacts exist between Mr. O'Connor, this action and Illinois. The *Mordelt* decision provides some guidance on this question. In *Mordelt*, the court stated that, in order for an exercise of personal jurisdiction over a nonresident defendant to comport with due process requirements, the defendant must have some minimum contacts with the state resulting from an affirmative act or acts on its part. *Id.* at 129. Also, it must not be unfair or unreasonable to require the defendant to defend the suit in the forum. *Id.* The court labelled these two requirements as the "affirmative act" and the "fairness"

prongs of the constitutional due process test.

The *Mordelt* court examined the three affirmative acts which arguably connected the defendants to the forum, Louisiana. The court found that none of these affirmative acts, one of which was Mr. Mordelt's attendance at the New Orleans trade show, was related to the cause of action. The court also found that requiring defendants to defend the suit in Louisiana would be unfair and unreasonable because (1) neither party was a Louisiana corporation, and, although the plaintiff corporation was licensed to do business in Louisiana, it apparently brought suit in Louisiana simply because it was able to personally serve the defendant there; (2) Louisiana had no special interest in providing a forum for the suit because none of its residents were involved; and (3) the "basic equities" of the case did not favor a Louisiana forum as the parties negotiated and executed the contract which was the basis for plaintiff's breach of contract claim in Florida and West Germany, and defendants did not "reach out" to plaintiff in Louisiana. *Mordelt*, 595 F.Supp. at 131.

In the present case, the only affirmative act which arguably connects Mr. O'Connor with Illinois is his attendance at the "Type-X 1984" trade exhibition. Mr. O'Connor's attendance at that exhibition had nothing to do with the contracts and actions which provide the basis for Pitman's complaint. Also, requiring Mr. O'Connor to defend this suit in Illinois would be unfair and unreasonable. As for the convenience of the parties, although Pitman is an Illinois corporation, its principal place of business is Secaucus, New Jersey, and Mr. O'Connor is a resident of the United Kingdom. Pitman never asserts that Mr. O'Connor contacted Pitman, or negotiated or executed any agreement with Pitman, in Illinois.[9] Similar to the

9. Neither Pitman nor the defendants state where the agreements at issue in this case were negotiated or executed, or where the alleged misrepresentation and misuse of confidential information occurred. The court notes that it is

likely that some of these actions may have taken place in New Jersey, the state in which Pitman's principal place of business is located. If so, Pitman would be able to assert, and a federal court in New Jersy could properly exercise, jur-

plaintiff in *Mordelt,* Pitman appears to have filed this suit in Illinois simply because it was able to personally serve Mr. O'Connor in Illinois. The court therefore finds that Mr. O'Connor's transient presence at the "Type-X 1984" exhibition fails to amount to the minimum contacts required under the due process clause. Likewise, even if Typecraft was somehow found to be doing business in Illinois for purposes of service, due process would preclude the exercise of personal jurisdiction over Typecraft as well.

### Conclusion

For the reasons stated above, the court therefore grants the motion of Typecraft and Mr. O'Connor to dismiss this action for lack of personal jurisdiction.

isdiction over defendants under New Jersey's long-arm statute.